No. 25-1677

_____

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE NINTH CIRCUIT

_____

American Federation of Government Employees (AFGE), et al.
*Plaintiff-Appellees,*
v.
The Office of Personnel Management, et al.
*Defendant-Appellants*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTICT OF CALIFORNIA
No. 3:25-cv-01780-WHA
The Honorable Judge William Alsup

_____

### DECLARATION OF ROBIN S. THOLIN IN SUPPORT OF
### PLAINTIFF-APPELLEES' OPPOSITION TO MOTION FOR STAY
### PENDING APPEAL FROM PRELIMINARY INJUNCTION

_____

Scott A. Kronland
Stacey M. Leyton
Eileen B. Goldsmith
Danielle E. Leonard
Robin S. Tholin
James Baltzer
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel.: (415) 421-7151
dleonard@altber.com
*Attorneys for Plaintiff-Appellee Organizations\**
*[additional counsel on following page]*

Norman L. Eisen
Pooja Chaudhuri
STATE DEMOCRACY DEFENDERS
FUND
600 Pennsylvania Avenue SE #15180
Washington, DC 20003
Tel: (202) 594-9958
Norman@statedemocracydefenders.org
Pooja@statedemocracydefenders.org

*Attorneys for Plaintiff Organizations\**

Teague Paterson
Matthew Blumin
AMERICAN FEDERATION OF
STATE, COUNTY, AND MUNICIPAL
EMPLOYEES
1625 L Street, N.W.
Washington, D.C.  20036
Tel: (202) 775-5900
TPaterson@afscme.org
MBlumin@afscme.org

*Attorneys for Plaintiff American
Federation of State County and
Municipal Employees (AFSCME)*

Rushab Sanghvi
AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES
80 F Street, NW
Washington, DC 20001
Tel: (202) 639-6426
Sanghr@afge.org

*Attorneys for Plaintiff American
Federation of Government Employees
(AFGE)*

Tera M. Heintz
Cristina Sepe
Cynthia Alexander
Deputy Solicitors General
OFFICE OF THE WASHINGTON
STATE ATTORNEY GENERAL
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
tera.heintz@atg.wa.gov
cristina.sepe@atg.wa.gov
cynthia.alexander@atg.wa.gov

*Attorneys for Plaintiff State of
Washington*

*Plaintiff-Appellee Organizations are the American Federation of Government Employees, AFL-CIO, American Federation of State County and Municipal Employees, AFL-CIO, AFGE Local 2110, American Federation of Government Employees Local 1216, United Nurses Associations of California/Union of Health Care Professionals, AFSCME, AFL-CIO, American Public Health Association, Association of Flight Attendants-CWA, AFL-CIO, American Geophysical Union, Point Blue Conservation Science, Climate Resilient Communities, Main Street Alliance, Common Defense Civic Engagement, Coalition to Protect Americas National Parks, Western Watersheds Project, Vote Vets Action Fund Inc.

## DECLARATION OF ROBIN S. THOLIN

I, Robin S. Tholin, declare as follows:

1.        I am an attorney at Altshuler Berzon, LLP.  I represent Plaintiff-Appellee organizations, consisting of all Plaintiffs except the State of Washington, in this action.  I am a member in good standing of the bars of the State of California and this Court.  I make this declaration based on my personal knowledge and if called to testify, could and would testify as stated herein.

2.        This appeal involves the unlawful terminations of federal employees across agencies ordered by Appellant-Defendant U.S. Office of Personnel Management ("OPM") because those employees were in a "probationary" category of service.

3.        On March 6, 2025, a lawsuit was filed in the United States District Court for the District of Maryland by the Attorneys General of twenty states against twenty-one federal agencies including OPM, alleging that the terminations of probationary employees constituted an unlawful reduction in force ("RIF").

4.        On March 13, 2025, the Maryland District Court issued a Temporary Restraining Order requiring eighteen agencies to reinstate all "Affected Probationary Employees throughout the United States FORTHWITH, and in any event before March 17, 2025, at 1:00 p.m. EDT."  A true and correct copy of that order is attached hereto as Exhibit A.

5.        On March 16, 2025, the Maryland Defendants filed a Consent Motion asking the Court to extend the deadline to file a required status report regarding

-1-

compliance—but not the compliance deadline itself—by six hours, to 7 p.m. on March 17. In that motion, Defendants stated: "Since issuance of the TRO at approximately 8:30 p.m. Thursday, March 13, …. Restrained Defendants, for their part, have worked diligently, with assistance and coordination from undersigned counsel, to comply with those requirements on the deadline established by this Court. Those compliance efforts have continued unabated through Saturday and Sunday, March 15 and 16, and will continue unabated through working and non-working hours on Monday, March 17, up to and including the 1 p.m. compliance deadline." A true and correct copy of that motion is attached hereto as Exhibit B.

6.      On March 17, 2025, the Maryland District Court granted the motion to extend the status report deadline. A true and correct copy of that order is attached hereto as Exhibit C.

7.      The Defendants filed a Status Report on March 17, 2025, attaching declarations from eighteen federal agency Defendants describing efforts toward compliance with the TRO. Five of those federal agency Defendants overlap with the relief defendants that are subject to the Preliminary Injunction at issue in this appeal (the Department of Agriculture, Department of Energy, the Department of the Interior, the Department of Treasury, and the Department of Veterans Affairs). True and correct copies of the declarations submitted by those agencies are attached hereto as Exhibit D.

8.      On March 17, 2025, after the 1 p.m. compliance deadline, but prior to the 7 p.m. status report deadline, the Maryland Defendants filed a motion for a stay

pending appeal and an immediate administrative stay in the Court of Appeals for the Fourth Circuit, which Plaintiffs opposed. As of March 18, 2025, that appeal remains pending, and is docketed under Case Number 25-1248.

9.      On March 18, 2025, the Maryland District Court issued a further Order, finding that the "Status Report reflects that the Restrained Defendants have made meaningful progress toward compliance with the TRO" and requiring a further update by March 24, 2025 "apprising the Court of the Restrained Defendants' additional steps towards compliance." A true and correct copy of that order is attached hereto as Exhibit E.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 18th day of March, 2025 in San Francisco, California.


                              */s/ Robin S. Tholin*
                              Robin S. Tholin

Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **STATE OF MARYLAND,** *et al.*, | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **CIVIL NO. JKB-25-0748** |
| **UNITED STATES DEPARTMENT OF AGRICULTURE,** *et al.*, | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### TEMPORARY RESTRAINING ORDER

For the reasons stated in the foregoing Memorandum, it is ORDERED as follows:

1. Plaintiffs' Motion for Temporary Restraining Order (ECF No. 4) is GRANTED with respect to the Restrained Defendants (as defined below). The Restrained Defendants are RESTRAINED pursuant to the terms of this Order throughout the United States.

2. All purported terminations of Affected Probationary Employees (as defined below) on or after January 20, 2025, by the Restrained Defendants and/or any parties working, directly or indirectly, in concert with the Restrained Defendants, are STAYED throughout the United States.

3. To alleviate the burdens on the States conducting their mandated rapid-response activities, the Restrained Defendants SHALL REINSTATE all Affected Probationary Employees throughout the United States FORTHWITH, and in any event before March 17, 2025, at 1:00 p.m. EDT.

4. The Restrained Defendants SHALL NOT, throughout the United States, conduct any future Reductions in Force ("RIFs")—whether formally labeled as such or not—except in

compliance with the notice requirements set forth in 5 U.S.C. § 3502, relevant regulations set forth in Title 5, Chapter I of the Code of Federal Regulations, and all other applicable law, in order to ensure that Plaintiff States receive adequate notice, as required by law, in order to conduct their mandated rapid-response activities.[1]

5. On or before Monday, March 17, 2025, at 1:00 p.m. EDT, the Restrained Defendants SHALL FILE on the Court's electronic docket a Status Report documenting the actions that they have taken to comply with this Order. Such Status Report shall set forth the number of Affected Probationary Employees reinstated at each Defendant agency, broken down by subagency, department, and/or other subdivision, to the greatest degree of granularity practicable.

6. The Court anticipates requiring further Status Reports, which may require the Restrained Defendants to provide further detail as to their compliance activities. The Court may also enter further orders as necessary to ensure compliance with this Order.

7. Any motion for extension of this Order is due on or before Friday, March 21, 2025, at 4:00 p.m. EDT, and any hearing on a motion for a Preliminary Injunction will occur on Wednesday, March 26, 2025, at 9:30 a.m. EDT in Courtroom 5A, United States Courthouse, 101 W. Lombard St., Baltimore, Maryland.

8. Pursuant to Rule 65(c), each individual Plaintiff State and the District of Columbia SHALL POST A BOND of $100, for a total of $2,000, with the Clerk of the Court FORTHWITH.

9. Unless the Court orders otherwise, this Order SHALL EXPIRE on Thursday, March 27, 2025, at 8:00 p.m. EDT.

---

[1] Nothing in this Order prohibits the Government from conducting lawful terminations of probationary federal employees—whether pursuant to a proper RIF or else for cause, on the basis of good-faith, individualized determinations, under the standards for making such determinations set forth in the foregoing Memorandum, and not as part of a mass termination.

10. For the purposes of this Order, the following definitions apply:

    a. Reinstatement means restoration to employment, whether actually on duty or on leave, including administrative leave.

    b. Restrained Defendants means the following agencies, and the respective agency heads sued in their official capacities:[2]

        i. United States Department of Agriculture;

        ii. United States Department of Commerce;

        iii. United States Department of Education;

        iv. United States Department of Energy;

        v. United States Department of Health and Human Services;

        vi. United States Department of Homeland Security;

        vii. United States Department of Housing and Urban Development;

        viii. United States Department of Interior;

        ix. United States Department of Labor;

        x. United States Department of Transportation;

        xi. United States Department of Treasury;

        xii. United States Department of Veterans Affairs;

        xiii. Consumer Financial Protection Bureau;

        xiv. Environmental Protection Agency;

        xv. Federal Deposit Insurance Corporation;

        xvi. General Services Administration;

---

[2] This definition includes all Defendants named in the Complaint, with the exception of: (1) the National Archives and Records Administration and Marco Rubio in his official capacity as Archivist; (2) the Office of Personnel Management and Charles Ezell in his official capacity as its Acting Director; and (3) the Department of Defense and Pete Hegseth in his official capacity as Secretary of the Department of Defense.

3

xvii.   Small Business Administration; and

xviii.   United States Agency for International Development.

c.   Affected Probationary Employees means all federal probationary employees who were previously employed by any of the Restrained Defendant agencies, or any department or other subdivision therein, and who were purportedly terminated on or after January 20, 2025. The definition excludes any such employees who (1) were actually terminated on the basis of a good-faith, individualized determination of cause, under the standards for making such a determination set forth in the foregoing Memorandum, and who (2) were not otherwise terminated as part of a mass termination.

DATED this _13_ day of March, 2025, at _8:15 P.M_ .

BY THE COURT:

James K. Bredar
United States District Judge

Exhibit B

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

---

STATE OF MARYLAND, et al.,

Plaintiffs,

     v.

UNITED STATES DEP'T OF
AGRICULTURE, et al.,

Defendants.

---

Case No. 1:25-cv-00748-JKB

**DEFENDANTS' CONSENT MOTION TO EXTEND DEADLINE TO FILE
STATUS REPORT FROM 1 P.M. EDT TO 7 P.M. EDT, MONDAY, MARCH 17, 2025**

Defendants respectfully ask the Court to extend the deadline to file their required Status

Report documenting the actions they have taken to comply with the Court's Temporary Restraining

Order ("TRO") of March 13, 2025 (ECF No. 43) by six (6) hours, from 1 p.m. EDT to 7 p.m. EDT

on Monday, March 17, 2025.  The Court's order applies to 18 federal agencies (ECF 44 at 2-3)

(hereinafter "Restrained Defendants"). Defendants do not request to extend the compliance

deadline set by the TRO, which would remain set for 1 p.m. EDT on Monday, March 17, and ask

only for modest scheduling relief to permit staggered compliance and Status Report deadlines.

Good cause supports this scheduling relief, which would further the interests of judicial economy

and permit a more orderly, accurate, and comprehensive filing process.

Since issuance of the TRO at approximately 8:30 p.m. Thursday, March 13, undersigned

counsel have worked diligently to communicate the TRO's requirements to Restrained Defendants.

Restrained Defendants, for their part, have worked diligently, with assistance and coordination

from undersigned counsel, to comply with those requirements on the deadline established by this

Court.  Those compliance efforts have continued unabated through Saturday and Sunday, March

15 and 16, and will continue unabated through working and non-working hours on Monday, March 17, up to and including the 1 p.m. compliance deadline.

At the same time, it has become apparent to undersigned counsel that modest scheduling relief shifting the Status Report deadline back by six hours, to 7 p.m. EDT, would permit a more orderly status report finalization and filing process. It would permit undersigned counsel, with assistance as necessary from other Department of Justice colleagues, to focus all reasonable efforts on continuing to assist and coordinate with Restrained Defendants in executing and documenting their compliance efforts by 1 p.m., then shift focus to preparing a Status Report that is accurate, comprehensive, and up to date with required compliance information. Thus, staggering the two deadlines by six hours, while maintaining the 1 p.m. TRO compliance deadline, would serve the interests of judicial economy.

Undersigned counsel conferred with counsel for the State of Maryland regarding this request; counsel provided their consent to this extension so long as Defendants filed the compliance Status Report on time under any extended schedule, without regard to any possible Fourth Circuit filings, to which Defendants have agreed. An order granting this modest scheduling relief would not prejudice Plaintiffs, as Restrained Defendants would continue all compliance efforts under the original 1 p.m. EDT compliance deadline, and would simply file the required Status Report no later than six hours after that deadline.

Respectfully submitted,

YAAKOV ROTH
Acting Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

DIANE KELLEHER
Branch Director

*/s/ Christopher R. Hall*
Christopher R. Hall
Assistant Director, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 305-4778
Email: Christopher.hall@usdoj.gov

KELLY O. HAYES
United States Attorney

*/s/ Beatrice C. Thomas*
Beatrice C. Thomas
Assistant United States Attorney
United States Attorney's Office
36 S. Charles Street, 4th Floor
Baltimore, MD 21202
Email: beatrice.thomas@usdoj.gov

*Attorneys for Defendants*

3

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on this 16th day of March 2025, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF System, which will send notice of such filing to all counsel.


*/s/ Beatrice C. Thomas*
Beatrice C. Thomas
Assistant United States Attorney

Exhibit C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

STATE OF MARYLAND, et al.,

Plaintiffs,

v.

UNITED STATES DEP'T OF
AGRICULTURE. et al.,

Defendants.

Case No. 1:25-cv-00748-JKB

## ORDER

On Defendants' Consent Motion to Extend Deadline to File Status Report from 1 p.m. EDT to 7 p.m. EDT Monday, March 17, 2025, good cause having been shown, Defendants' motion is GRANTED. It is hereby ORDERED that Defendants' deadline to file a Status Report is extended to 7 p.m. EDT Monday, March 17, 2025.

The compliance deadline for Restrained Defendants to comply with the Temporary Restraining Order shall remain 1 p.m. EDT Monday, March 17, 2025.

DATED this ___17th___ day of March, 2025, at ___8:10 a.m.___.

BY THE COURT:

/s/ JAMES K. BREDAR

HONORABLE JAMES K. BREDAR
UNITED STATES DISTRICT JUDGE

Exhibit D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| Maryland, et al., | |
| Plaintiffs, | Case No. 1:25-cv-00748-JKB |
| v. | |
| United States Department of Agriculture, et al., | |
| Defendants. | |

## DECLARATION OF REESHA TRZNADEL

Pursuant to 28 U.S.C. § 1746, I, Reesha Trznadel declare as follows:

1.      I am the Acting Chief Human Capital Officer at the United States Department of Energy ("DOE") headquartered in Washington, D.C. I make this Declaration based on my own personal knowledge, on information contained in the records of DOE, or on information provided to me by DOE employees.

2.      I have served in this position since February 28, 2025.  In my Acting role at DOE, I oversee those responsible for personnel management. I oversee those responsible for personnel enterprise and tracking and recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those related to probationary employees.

3.      Probationary employees in the competitive service are generally employees who have been employed for less than one year. In the excepted service, the trial period may be up to two years.

4.    The probationary period is part of the hiring process, and probationary employees have limited protections against termination. The probationary period is an extended tryout to determine the fitness of the employee and, according to regulation, an agency "shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment." An employee's appointment is not final until they have completed their probationary period.

5.    On January 20, 2025, although I was not serving in this position at that time, it is my understanding that DOE received a guidance memorandum from the Office of Personnel Management ("OPM"), which stated that "agencies should identify all employees on probationary periods" and "should promptly determine whether those employees should be retained at the agency."

6.    On or around February 13 and February 14, 2025, DOE terminated approximately 555 probationary employees.

7.    I have been provided and have reviewed the temporary restraining order (TRO) issued in this case on March 13, 2025, requiring various Defendants including DOE to reinstate all Affected Probationary Employees, as defined in paragraph 10(c) of the TRO, who were terminated on or after January 20, 2025.

8.    Whether required by operation of the TRO here or another court or administrative order, reinstatement of removed employees to full duty status could impose burdens on DOE and cause significant confusion and turmoil for the terminated employees. Specifically, all employees offered reinstatement into full duty status are being onboarded again, including going through any applicable training, filling out human resources paperwork, obtaining new security badges, re-enrolling in benefits programs and payroll, reinstituting applicable security clearance actions,

receiving government furnished equipment, and other requisite administrative actions, such as auditing personnel requests to ensure any actions that would have otherwise been taken during their period of separation are completed.

9.      Additionally, an appellate ruling could reverse the district court's order shortly after terminated employees have been reinstated (via administrative leave or otherwise) or have returned to full duty status. In short, employees could be subjected to multiple changes in their employment status in a matter of weeks.

10.     Nonetheless, DOE has immediately begun cancelling the termination actions for all of its 555 Affected Probationary Employees. By 1:00 p.m. on March 17, 2025, DOE had cancelled the termination notices for approximately 319 of its 555 Affected Probationary Employees and placed them in a retroactive Administrative Leave status from the date of removal. DOE completed this process for the remaining Affected Probationary Employees by 1:35 p.m. on March 17, 2025. If any of these 555 employees ultimately choose not to return to employment with the Department, but instead choose to resign, their official records (eOPF) will reflect the date of resignation specific to the date it was communicated to leadership.

11.     All Affected Probationary Employees have been placed in a retroactive Administrative Leave status that will continue until their badging and IT access are restored, at which time they will be converted to an Active Duty status.

12.     DOE continues working to reinstate employees by working with Agency leadership to arrange for an orderly return to the office (onboarding) while the employees are in an administrative leave status. Additionally, DOE is working to restore benefit entitlements for all the employees and ensure all personnel records are corrected and accurate.

3

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 17, 2025

/s/ Reesha Trznadel

REESHA TRZNADEL
ACTING CHIEF HUMAN CAPITAL OFFICER
US DEPARTMENT OF ENERGY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| Maryland, et al., | Case No. 1:25-cv-00748-JKB |
|     Plaintiffs, | |
|     v. | |
| United States Department of Agriculture, et al., | |
|     Defendants. | |

**DECLARATION OF MARK D. GREEN**

Pursuant to 28 U.S.C. § 1746, I, Mark D. Green, declare as follows:

1.      I am the Deputy Assistant Secretary for Human Capital, Learning, and Safety at the U.S. Department of the Interior ("Department"), headquartered in Washington, D.C.  I have served in this position since September 2022.  I make this Declaration based on my own personal knowledge, on information contained in the records of the Department, or on information provided to me by Department employees.

2.      In my role at the Department, I am responsible for personnel management. I have the responsibility for overseeing the personnel enterprise and tracking and recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those related to probationary and trial period appointees.

3.      Probationary appointees in the competitive service are individuals who have been working in their respective positions for less than one year. In the excepted service, the trial period is generally two years.

4.      Probationary and trial periods are part of the hiring process, and probationary and trial period appointees have extremely limited protections against termination compared to individuals who satisfy the definition of "employee," and accordingly enjoy greater due process protections. Probationary and trial periods are essentially extended tryouts for finalized appointments. Supervisors evaluate probationary and trial period appointees to determine whether the individuals would be a good fit for long-term employment. While working throughout probationary or trial periods, individuals receive no assurance of final appointments or of becoming permanent employees.

5.      On or about January 20, 2025, I reviewed a guidance memorandum issued by the Office of Personnel Management ("OPM"), which requested that the Department and other agencies review all probationary and trial period appointees and identify which individuals should be retained and which should be terminated. Consistent with the OPM guidance, the Department reviewed all probationary and trial period appointees' performances to determine which individuals to keep and which to terminate.  The Department continued this review process even after OPM clarified its earlier guidance on February 14 and 24, 2025.

6.      On or after February 14, 2025, the Department retained, and did <u>not</u> terminate, the competitive service appointments of 1968 individuals during their respective probationary periods and did <u>not</u> terminate the excepted service appointments of 422 individuals during their respective trial periods. However, on or after February 14, 2025, the Department did terminate the competitive service appointments of 1303 individuals during their respective probationary periods and did terminate the excepted service appointments of 409 individuals during their respective trial periods, for a total of 1712 termination actions taken by the Department. Although OPM offered language for potential use in developing termination notices, the Department did not adopt OPM's

2

suggestions, and instead, independently developed language used in the termination notices that informed affected individuals of these personnel decisions.

7.      I have been provided and have reviewed the temporary restraining order (TRO) issued in this litigation on March 13, 2025, requiring the Department to reinstate all Affected Probationary [and Trial Period Appointees], as such individuals are defined in paragraph 10(c) of the TRO, who were terminated on or after January 20, 2025.

8.      Whether required by operation of the TRO here or another court or administrative order, the reinstatement of all probationary and trial period appointees whom the Department terminated on or after February 14, 2025, imposes substantial burdens on the Department, causes significant confusion, and will potentially subject terminated individuals to the receipt of conflicting or contradictory information.  Specifically, reinstating terminated appointees imposes significant administrative burdens on the Department. Among other things, all reinstated individuals must be onboarded again, which includes the labor-intensive processes of coordinating human resources efforts and paperwork, issuing new security badges and government-furnished equipment, reinstituting applicable security clearance actions, arranging for any necessary and applicable training, re-enrolling affected individuals in benefits programs, assessing the appropriateness of granting reinstated appointees administrative leave, and calculating and processing the amount of any financial obligation that the Department may owe as a result of the reinstatements and the amounts, if any, that reinstated individuals request to have withheld for various work-related benefits. The Department must also take other requisite administrative actions, such as evaluating the off-duty actions of reinstated appointees during the period of separation, and auditing personnel requests to ensure any actions that would have otherwise been taken during their period of separation are completed.

3

9.     Additionally, reinstating terminated appointees causes confusion for the Department and reinstated individuals, more than four hundred forty (440) of whom have appeals currently pending before Administrative Judges assigned to U.S. Merit Systems Protection Board (MSPB) Regional and Field Offices. Persons who were terminated just weeks ago have now been reinstated, and the effect of these reinstatements will impact pending or potential MSPB appeals and will compel preservation, at least temporarily, of the now-rescinded termination actions. Yet, an appellate ruling could reverse the district court's order shortly after terminated individuals have been reinstated through extended grants of administrative leave, complete restoration to full-duty status, or otherwise. The Department could reverse reinstatements in that circumstance and correspondingly impact pending or potential or dismissed MSPB appeals. And even though the terminated individuals have now been reinstated prior to any reversal of the district court's order, the reinstated individuals remain probationary or trial period appointees and can again be subject to termination actions, which would again inform affected individuals of their rights associated with filing MSPB appeals, filing complaints pursuant to processes established by the U.S. Equal Employment Opportunity Commission, and filing complaints pursuant to processes established by the U.S. Office of Special Counsel.  In short, reinstated individuals will be subjected to multiple changes in their employment status in a matter of weeks and will be forced to untangle the maze of their potential appeal rights.

10.     The tremendous uncertainty associated with this confusion and these administrative burdens impede supervisors from appropriately managing their workforce. Work schedules and assignments are effectively being tied to hearing and briefing schedules set by the courts. It will be extremely difficult to assign new work to reinstated individuals in light of the uncertainty over their future status.

11.     Finally, reinstating terminated appointees interferes with the effective functioning of the Department. On and after February 14, 2025, the Department has made meaningful changes to address the challenged terminations, including reassigning the duties performed by the terminated individuals, many of whom will have no duties to perform upon reinstatement.

12.     Nonetheless, the Department has complied with the TRO by reinstating affected probationary period and trial period appointees.  As of 1 p.m. EDT on this date, the Department had (a) reinstated, by cancelling termination actions (a very time and labor intensive process) for, approximately forty-five percent (45%) of the 1301 individuals whose competitive service appointments the Department had terminated during their respective probationary periods and had (b) reinstated, by cancelling termination actions for, approximately twenty-five percent (25%) of the 409 individuals whose excepted service appointments the Department had terminated during their respective trial periods.  As of the time and date of this declaration, the Department had (c) reinstated, by cancelling termination actions for, approximately ninety-five percent (95%) of the 1301 individuals whose competitive service appointments the Department had terminated during their respective probationary periods and had (d) reinstated, by cancelling termination actions for, approximately seventy-five percent (75%) of the 409 individuals whose excepted service appointments the Department had terminated during their respective trial periods. Accordingly, as of the time and date of this declaration, the Department had reinstated, by cancelling termination actions for, approximately ninety percent (90%) of the 1710 individuals whom the Department had terminated during their respective probationary or trial periods on or after February 14, 2025. Throughout the remainder of this date, the Department will continue the reinstatement process, by cancelling termination actions, for the remaining ten percent (10%) of the 1710 individuals whom the Department terminated during their respective probationary or trial periods on or after February

5

14, 2025. The Department does not intend to reinstate two (2) individuals, both of whom qualify for exclusions from the TRO in accordance with 10(c).

13.    The Department has notified or attempted to notify, telephonically and electronically (via personal email addresses where and when known to the Department), all affected individuals of these reinstatement actions and the cancellations of the termination decisions, but to the extent that the Department needs to complete additional administrative processes related to these reinstatement/cancellation efforts, the Department continues to work diligently to complete such processes.

14.    The Department will continue to analyze all data and information relevant to termination actions, taken on or after February 14, 2025, that have affected or will affect individuals during their respective probationary or trial periods.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 17, 2025

Digitally signed by
MARK GREEN
Date: 2025.03.17
18:27:03 -04'00'

MARK D. GREEN

6

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| Maryland, et al., <br><br>     Plaintiffs, <br><br>     v. <br><br> United States Department of Agriculture, <br><br> et al., <br><br>     Defendants. | Case No. 1:25-cv-00748-JKB |

### DECLARATION OF TREVOR NORRIS

Pursuant to 28 U.S.C. § 1746, I, Trevor Norris, declare, as follows:

1. I am Deputy Assistant Secretary (DAS) for Human Resources (HR) for the United States Department of the Treasury, headquartered in Washington, D.C. I have served in this position since October 2017. As DAS for HR, I oversee all human capital programs for the Department of the Treasury and its bureaus (collectively, "Treasury"). I have the responsibility for tracking and recording personnel actions, including terminations.

2. Probationary employees in the competitive service are employees who have been employed for less than one year. In the excepted service, the trial period may be up to two years.

3. The probationary period is part of the hiring process, and probationary employees have limited protections against termination. The probationary period is essentially an extended tryout to determine the fitness of the employee and, according to regulation, an

agency "shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment."

4. On January 20, 2025, Treasury received a guidance memorandum from the Office of Personnel Management ("OPM"), which stated that "agencies should identify all employees on probationary periods" and "should promptly determine whether those employees should be retained at the agency."

5. Between February 19 and March 7, 2025, Treasury terminated approximately 7,605 out of approximately 16,663 probationary employees.

6. I have been provided and have reviewed the temporary restraining order (TRO) issued in this case on March 13, 2025, requiring Treasury to reinstate all Affected Probationary Employees, as defined in paragraph 10(c) of the TRO, who were terminated on or after January 20, 2025.

7. Whether required by operation of the TRO here or another court or administrative order, all employees offered reinstatement into full duty status would have to be onboarded again, including going through any applicable training, filling out human resources paperwork, obtaining new security badges, reinstituting applicable security clearances, receiving government furnished equipment, and other requisite administrative actions, such as auditing personnel requests to ensure any actions that would have otherwise been taken during their period of separation are completed.

8. Additionally, an appellate ruling could reverse the district court's order shortly after terminated employees have been reinstated (via administrative leave or otherwise) or have returned to full duty status. In short, employees could be subjected to multiple changes in their employment status in a matter of weeks.

2

9.     Nonetheless, Treasury has immediately begun reinstating Affected Probationary Employees. Specifically, I worked with my colleagues within the office of the DAS for HR over the weekend of March 15-16 to develop an implementation plan for reinstating Affected Probationary Employees. At 10:30 A.M. on March 17, my office convened a meeting with the Human Resources Officers of Treasury's bureaus, and directed them to provide notice (via personal emails or other available means) to Affected Probationary Employees by 1:00 P.M. Bureaus were provided with a template notice informing employees that they were being reinstated immediately.

    a.   The Bureau of Engraving and Printing provided email notice of reinstatement to all of its 48 Affected Probationary Employees at 11:31 A.M. on March 17, 2025.

    b.   The Bureau of the Fiscal Service provided email notice to 168 of its 169 Affected Probationary Employees prior to 1:00 P.M. on March 17, 2025. The final remaining employee received notice at 1:07 PM after an invalid email address was corrected.

    c.   The United States Mint experienced delays in retrieving personal email addresses for its 8 Affected Probationary Employees, but managed to provide email notices to all 8 persons by 1:30 P.M., March 17, 2025.

    d.   Due to difficulty in compiling personal email addresses, the Internal Revenue Service (IRS) was not able to fully comply with the 1:00 deadline. It sent email notices to 6,387 of its 7,315 Affected Probationary Employees by 3:00 P.M. on March 17, 2025. The IRS has arranged for certified mail

3

notifications to be sent to all of its Affected Probationary Employees on March 18, 2025.

e.  The Office of the Comptroller of the Currency (OCC) had not yet formally processed the terminations of its 73 Affected Probationary Employees (which was effective March 8), and as a result was able to formally place these employees in an administrative leave status on March 16. OCC also sent email notices to its affected employees, at 3:54 P.M. on March 17.

All Treasury bureaus are working expeditiously to complete administrative processing of the reinstatements in their Human Resources systems, including issuance of SF-50 Notice of Personnel Action Forms.

10.    Upon reinstatement, Treasury will place each affected employee in an Administrative Leave status.

11.    Treasury continues working to reinstate the 7,613 employees affected by the termination actions taken between February 19 and March 7, 2025.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 17, 2025

TREVOR NORRIS

4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| Maryland, et al.,<br><br>     Plaintiffs,<br><br>     v.<br><br>United States Department of Agriculture,<br>et al.,<br><br>     Defendants. | Case No. 1:25-cv-00748-JKB |

**DECLARATION OF MARY PLETCHER RICE**

Pursuant to 28 U.S.C. § 1746, I, Mary Pletcher Rice declare as follows:

1.     I am the Acting Principal Deputy Assistant Secretary for Administration within Departmental Administration at the United States Department of Agriculture ("USDA" or "Department") headquartered in Washington, D.C. I make this Declaration based on my own personal knowledge, on information contained in the records of USDA, or on information provided to me by USDA employees. I have served in this position since January 31, 2025, and I have been employed at USDA since 2018.

2.     In my role at USDA, I currently oversee the Department's Office of Human Resources Management and I have purview over USDA subagencies' Chief Operating Officers and Human Resources Offices.

3.     Approximately 5,714 probationary employees were terminated from USDA beginning February 13, 2025, and concluding on or around February 17, 2025. I have been provided, and have reviewed, the temporary restraining order ("TRO") issued in the above-

captioned case on March 13, 2025, requiring USDA to reinstate all Affected Probationary Employees, as defined in paragraph 10(c) of the TRO, who were terminated on or after January 20, 2025.

4.    USDA is already reinstating the terminated probationary employees, pursuant to a 45-day March 5, 2025, Stay Order issued by the Merit Systems Protection Board ("MSPB"), which was requested by the Office of Special Counsel.

5.    On March 12, 2025, USDA reinstated all 5,714 Affected Probationary Employees by restoring them to the status they were in prior to their terminations and provided each with back pay from the date of their respective termination. As part of a phased plan for return-to-duty, upon returning to pay status, the Affected Probationary Employee will initially be placed on paid administrative leave. USDA began the notification process on Friday March 14th to all Affected Probationary Employees confirming their reinstatement. USDA is diligently working on providing this notice to all Affected Probationary Employees.

6.    A group of 1,070 seasonal Forest Service Affected Probationary Employees who were not in pay status at the time of their terminations (due to the off-season) have been reinstated to their prior unpaid status. Additionally, there are six Affected Probationary Employees in the Foreign Agricultural Service who were administratively furloughed prior to their terminations, and who have been reinstated to their prior administrative furlough status.

7.    USDA is acting diligently to complete the administrative steps related to notifying the Affected Probationary Employees of their reinstatement, processing the reinstatements for purposes of all relevant USDA record systems, and returning the reinstated employees to duty status.

8.      Whether required by operation of the March 5, 2025, MSPB Stay Order and/or this Court's March 13, 2025, Temporary Restraining Order, reinstating the terminated probationary employees is complex and places the following logistical burdens on USDA and its approximately 29 subordinate Mission Areas, Agencies, and Staff Offices, including USDA's multiple human resources offices: (1) initiating the process of placing all removed probationary employees, who received February 2025 termination letters, into pay status, and providing backpay, from the date of the termination notice through the present, which involves several systems and applies across multiple pay periods; (2) ascertaining whether some of the probationary employees choose to resign, due to having secured other employment or not wanting to return to duty at USDA; (3) reinstituting and ensuring operational status of secured LincPasses, office space, and equipment (including laptops in most instances) for those individuals whose mission criticality requires on-site work; and (4) addressing, as appropriate, any identified or substantiated threats to the physical safety of USDA's existing 111,000 person workforce and security of USDA's physical plants and assets across the nation.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 17, 2025

MARY RICE
/s/

Digitally signed
by MARY RICE
Date: 2025.03.17
18:20:46 -04'00'

MARY PLETCHER RICE

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

Maryland, et al.,

      Plaintiffs,

      v.

United States Department of Agriculture, et al.,

      Defendants.

Case No. 1:25-cv-00748-JKB

### DECLARATION OF MARK ENGELBAUM

Pursuant to 28 U.S.C. § 1746, I, Mark Engelbaum declare as follows:

1.      I am the Assistant Secretary for Human Resources and Administration/Operations, Security, and Preparedness at the Department of Veterans Affairs (VA), headquartered in Washington, D.C.  I make this Declaration based on my own personal knowledge, on information contained in the records of the VA, or on information provided to me by VA employees.

2.      I have served in this position since February 13, 2025.  In my role at the VA, I am responsible for personnel management. I have the responsibility for overseeing the personnel enterprise and tracking and recording of personnel actions, including terminations. I assist in ensuring that all personnel actions comply with federal law, including those related to probationary employees.

3.      Probationary employees in the competitive service are employees who have been employed for less than one year. In the excepted service, the trial period may be up to two years.

4.      The probationary period is part of the hiring process, and probationary employees have limited protections against termination. The probationary period is essentially an extended tryout to determine the fitness of the employee and, according to regulation, an agency "shall terminate his or her services during this period if the employee fails to demonstrate fully his or her qualifications for continued employment."

5.      On January 20, 2025, the VA received a guidance memorandum from the Office of Personnel Management ("OPM"), which stated that "agencies should identify all employees on probationary periods" and "should promptly determine whether those employees should be retained at the agency."

6.      VA initially terminated approximately 1,900 probationary employees between February 13, 2025, and February 24, 2025, out of approximately 46,000 probationary employees on board at VA at that time. Following administrative review, 1,683 remained terminated as of March 17, 2025.

7.      I have been provided and have reviewed the temporary restraining order (TRO) issued in this case on March 13, 2025, requiring VA to reinstate all Affected Probationary Employees, as defined in paragraph 10(c) of the TRO, who were terminated on or after January 20, 2025.

8.      Whether required by operation of the TRO here or another court or administrative order, reinstatement of removed employees to full duty status would impose substantial burdens on VA, cause significant confusion, and cause turmoil for the terminated employees. Specifically, all employees offered reinstatement into full duty status would have to be onboarded again, including going through any applicable training, filling out human resources paperwork, obtaining new security badges, re-enrolling in benefits programs and payroll, reinstituting applicable security

2

clearance actions, receiving government furnished equipment, and other requisite administrative actions, such as auditing personnel requests to ensure any actions that would have otherwise been taken during their period of separation are completed.

9.    Additionally, an appellate ruling could reverse the district court's order shortly after terminated employees have been reinstated (via administrative leave or otherwise) or have returned to full duty status. In short, employees could be subjected to multiple changes in their employment status in a matter of weeks.

10.    Nonetheless, VA has immediately begun rescinding the notice of termination and reinstating the employment of the Affected Probationary Employees. While notification efforts are still underway, the VA, by 1:00 pm EDT today, Monday, March 17, 2025, has for all intents and purposes, reinstated all Affected Probationary Employees, placing them in an initial administrative leave status with full pay and benefits, effective March 17, 2025. Affected Probationary Employees will also receive back pay from the date of termination to the date of reinstatement.

11.    Individual personal contact information is not immediately available for every individual employee at the Agency level. Accordingly, as of the signing of this declaration, the VA has begun sending rescission notices to those employees for whom contact information is available as well as to the servicing Human Resources offices of all 1,683 affected Probationary Employees. The Human Resources offices are notifying the supervisors of these employees, who have been instructed to expeditiously notify the Affected Probationary Employees that they are reinstated and in a pay status.  The Agency will follow up on a daily basis, starting on close of business Monday, March 17, 2025 until it has received verification that all impacted employees have been notified. VA has started the process to cancel the Standard Form (SF) 50s that

terminated the employment of the Affected Probationary Employees and expects this process to be completed no later than Tuesday, March 18, 2025.

12.      VA continues working to reinstate to all Affected Probationary Employees. VA is engaging the Affected Probationary Employees' supervisor to ensure employees receive the notice, are aware of their employment status, and are advised to maintain contact with their supervisor while on administrative leave. The VA is acting diligently to complete additional administrative processes related to the reinstatement of these employees.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 17, 2025

/s/Mark Engelbaum 7:05 p.m.

Mark Engelbaum

Exhibit E

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **STATE OF MARYLAND,** *et al.*, | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **CIVIL NO. JKB-25-0748** |
| **UNITED STATES DEPARTMENT OF AGRICULTURE,** *et al.*, | * | |
| | * | |
| **Defendants.** | * | |
| * * * * * * * * | * * * * | |

### <u>ORDER</u>

On Thursday, March 13, 2025, the Court issued a Temporary Restraining Order ("TRO") in this matter. (ECF No. 44.) The TRO required, *inter alia*, that Restrained Defendants reinstate all Affected Probationary Employees, as those terms are defined in the TRO, by 1:00 p.m. EDT on Monday, March 17, 2025. (*Id.*) Pursuant to the terms of the TRO, the Government has filed a Status Report apprising the Court of its efforts toward compliance with the TRO's substantive requirements. (ECF No. 52.)

The Court has carefully reviewed the Status Report. Upon that review, it is now ORDERED that:

1. The Status Report reflects that the Restrained Defendants have made meaningful progress toward compliance with the TRO.

2. On or before Monday, March 24, 2025, at 1:00 p.m. EDT, the Restrained Defendants SHALL FILE an updated Status Report, apprising the Court of the Restrained Defendants' additional steps towards compliance. The Court expects that this updated Status Report will show that the Restrained Defendants have

achieved substantial compliance with the terms of the TRO.  The updated Status Report shall contain updated declarations, from appropriate personnel at each of the Restrained Defendant agencies, addressing the reinstatement of Affected Probationary Employees.

3.  The format of the Status Report is acceptable to the Court.  The Restrained Defendants shall continue using that format for future status reports.

4.  Plaintiffs are reminded of their obligation to post a bond FORTHWITH.

5.  The definitions set forth in paragraph 10 of the TRO are incorporated into this Order.

DATED this 18th day of March, 2025, at ___11:50 a.m.___.

BY THE COURT:

/s/ JAMES K. BREDAR

James K. Bredar
United States District Judge

2