No. 25-1677

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

American Federation of Government Employees (AFGE), et al.
*Plaintiff-Appellees*,
v.
The Office of Personnel Management, et al.
*Defendant-Appellants*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTICT OF CALIFORNIA
No. 3:25-cv-01780-WHA
The Honorable Judge William Alsup

_____

## PLAINTIFF-APPELLEES' OPPOSITION TO
## MOTION FOR STAY PENDING APPEAL
## FROM PRELIMINARY INJUNCTION

_____

Scott A. Kronland
Stacey M. Leyton
Eileen B. Goldsmith
Danielle E. Leonard
Robin S. Tholin
James Baltzer
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel.: (415) 421-7151
dleonard@altber.com

*Attorneys for Plaintiff-Appellee Organizations\**
*[additional counsel on following page]*

Norman L. Eisen
Pooja Chaudhuri
STATE DEMOCRACY DEFENDERS
FUND
600 Pennsylvania Avenue SE #15180
Washington, DC 20003
Tel: (202) 594-9958
Norman@statedemocracydefenders.org
Pooja@statedemocracydefenders.org

*Attorneys for Plaintiff Organizations**

Teague Paterson
Matthew Blumin
AMERICAN FEDERATION OF
STATE, COUNTY, AND MUNICIPAL
EMPLOYEES
1625 L Street, N.W.
Washington, D.C.  20036
Tel: (202) 775-5900
TPaterson@afscme.org
MBlumin@afscme.org

*Attorneys for Plaintiff American
Federation of State County and
Municipal Employees (AFSCME)*

Rushab Sanghvi
AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES
80 F Street, NW
Washington, DC 20001
Tel: (202) 639-6426
Sanghr@afge.org

*Attorneys for Plaintiff American
Federation of Government Employees
(AFGE)*

Tera M. Heintz
Cristina Sepe
Cynthia Alexander
Deputy Solicitors General
OFFICE OF THE WASHINGTON
STATE ATTORNEY GENERAL
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744
tera.heintz@atg.wa.gov
cristina.sepe@atg.wa.gov
cynthia.alexander@atg.wa.gov

*Attorneys for Plaintiff State of
Washington*

*Plaintiff-Appellee Organizations are the American Federation of Government Employees, AFL-CIO, American Federation of State County and Municipal Employees, AFL-CIO, AFGE Local 2110, American Federation of Government Employees Local 1216, United Nurses Associations of California/Union of Health Care Professionals, AFSCME, AFL-CIO, American Public Health Association, Association of Flight Attendants-CWA, AFL-CIO, American Geophysical Union, Point Blue Conservation Science, Climate Resilient Communities, Main Street Alliance, Common Defense Civic Engagement, Coalition to Protect Americas National Parks, Western Watersheds Project, Vote Vets Action Fund Inc.

## TABLE OF CONTENTS

BACKGROUND ........................................................................................3

    A.    OPM-Ordered Terminations of Federal Employees and Ensuing
        Irreparable Harm ..........................................................................3

      1.    The District Court's Finding that OPM Ordered the Terminations Is
           Well-Supported ......................................................................3

      2.    Findings of Widespread and Ongoing Irreparable Harm. ........6

    B.    Statutory And Regulatory Background .......................................7

    C.    Prior Proceedings .......................................................................8

STANDARD ...........................................................................................11

ARGUMENT ..........................................................................................12

    I.    Defendants Do Not Establish Irreparable Injury. .......................12

    II.    Defendants Will Not Succeed in Overturning the Injunction. ...15

    A.    There Is No Real Dispute that OPM Violated the Law. .........16

    B.    The District Court Correctly Found Standing. .......................16

    C.    Plaintiff Organizations and Washington State Are Not "Channeled" to
        Administrative Agencies. .........................................................18

    D.    Defendants' Challenge to the Scope of Relief Lacks Merit. .................23

      1. Defendants' post-TRO actions were insufficient....................23

      2. The District Court did not abuse its discretion in requiring
        reinstatement. ........................................................................24

    III.    Equitable Factors All Weigh Against Stay ................................27

CONCLUSION .......................................................................................28

## PLAINTIFF-APPELLEES' OPPOSITION TO
## MOTION FOR STAY PENDING APPEAL
## FROM PRELMINARY INJUNCTION

The District Court found that Plaintiff-Appellees presented a "mountain" of evidence that Defendant-Appellant U.S. Office of Personnel Management ("OPM") unlawfully ordered the terminations of federal employees across agencies because they were in a "probationary" category of service. By contrast, Defendants continually "attempt[ed] to frustrate fact-finding" (Dkt.133 at 3) and presented no credible contrary evidence (submitting then withdrawing one declaration, then submitting a second with "scant" evidentiary value, Dkts.132 at 11, 133 at 3). The District Court issued considered TRO and preliminary injunction orders, based on extensive factual findings, requiring Defendants to unwind their unlawful actions and restore government services by reinstating employees at six federal agencies for which the evidence was the strongest.

Defendants come nowhere near meeting the standard required for stays pending appeal. Their retroactive protest that restoring the status quo would be administratively burdensome does not establish irreparable injury. As the District Court found in denying a stay pending appeal, Defendants' after-the-fact arguments about administrative burden and scope of relief fell far short, particularly because "the government has wholly failed to argue there is any other way to avoid the irreparable injuries flowing from the unlawful terminations except to reinstate the employees." Dkt.133 at 2. No factor favors a stay.

-2-

# BACKGROUND

### A.    OPM-Ordered Terminations of Federal Employees and Ensuing Irreparable Harm

#### 1.    The District Court's Finding that OPM Ordered the Terminations Is Well-Supported

Based on a "mountain of evidence" (Dkt.45 at 8), the District Court found that in February 2025, "OPM directed other agencies to fire their probationary employees." Dkt.132 at 2. The Court relied on agency admissions:

- Forest Service: "*All federal agencies*, including the Department of Agriculture, *were notified on February 12, 2025, by the Office of Personnel Management (OPM) to terminate all employees* who have not completed their probationary or trial period.... OPM directed agencies to separate Probationary employees starting 2/13/25." Dkt.132 at 2 (Dkt.71).

- USDA: "[A]gencies were *directed* to begin providing termination notices ... beginning immediately upon OPM notification." Dkt.132 at 2; Dkt.39-6.

  NSF: "We were *directed* last Friday by OPM to terminate all probationers except for a minimal number of mission critical probationers… This is not a decision the agency made." Dkt.132 at 3; Dkt.18-9.

- IRS: "[T]he removal of the probationary employees, again, that was something that was *directed from OPM*." Dkt.132 at 3; Dkt.39-5, 94-1.

- Energy:  terminations "*[p]er OPM instructions."* Dkt.132 at 2; Dkt.39-4.

- VA to Congress: "There was *direction* from the Office of Personnel Management." Dkt.132 at 4; Dkt.39-1.

-3-

- Defense: "*In accordance with direction from OPM*, beginning February 28, 2025, all DoD Components must terminate the employment of all individuals who are currently serving a probationary or trial period." Dkt.132 at 4; Dkt.39-4.

Even Defendants' own evidence, the court found, showed that OPM directed the terminations. Dkt.132 at 10-11 (discussing Dkt.111-2 at 2). In a February 14 email, OPM instructed all agencies to terminate probationary employees by February 17, and redefined "qualifications for continued employment" (as used in 5 C.F.R. §315.803) to "mean[] that only the highest-performing probationers in mission-critical areas should be retained." Dkt.111-2 at 2.

The Court further found that that "OPM directed agencies to fire [probationary] employees under the pretense of 'performance,'" including by using a "template termination letter." Dkt.132 at 5-7 (citing Dkt.87-1). While some agencies made "slight tweaks" to the language, they "maintained the central pretense" and "stayed true to the OPM template, down to the footnotes." *Id*. at 7. This "pretense" of performance-based termination was, "at least in part, [to] circumvent statutory and regulatory reduction in force procedures and foreclose appeal to the Merit Systems Protection Board." Dkt.132-7-8; *see also* Dkt.64-1.

The Court further credited Plaintiffs' evidence and agency officials' admissions that the OPM-directed terminations were not actually based on, and did not consider, employees' performance. Dkt.132 at 6-7 (collecting evidence).

The Court also credited Plaintiffs' evidence that OPM made the final call on which employees agencies were permitted to keep. *Id.* at 3 (citing NSF: "We chose

-4-

to retain them all" but "late Friday night," "[t]hey told us that they directed us to remove probationers"); *id.* at 4 (IRS: "OPM would not allow us to exempt military veterans from the probationary terminations").

OPM's directives caused "tens of thousands" of terminations, with "[a]s many as 200,000 … [remaining] at risk." Dkt.45 at 2, 5.

The Court also found that Defendants submitted no credible contrary evidence. Defendants presented two substantive declarations. The first, from Defendant Charles Ezell, was *withdrawn* by Defendants in advance of the PI hearing "to avoid submitting its declarant to examination, in violation of [the District] Court's order." Dkt.133 at 3. Defendants then submitted a different OPM official (Noah Peters)'s declaration, which had "scant evidentiary value" (*id.*) because Peters did "not claim personal knowledge as to *anything* in his declaration" or "state that he participated in *any* of the calls he describes." Dkt.132 at 11. The court found Defendants' remaining documents—consisting of "press releases and a feeble start to a yet-to-come 'administrative record'"— "unpersuasive." *Id.* at 10.

After entry of the TRO but before the preliminary injunction hearing, on March 5 Defendants issued "revised OPM guidance" stating that "OPM is not directing agencies to take any specific performance-based actions regarding probationary employees." Mot. at 10. But as the District Court found, Defendants submitted "no evidence suggesting that federal agencies—some of which have continued to terminate probationers—are now acting at their own discretion. Nor

-5-

has OPM submitted any evidence suggesting that it has rescinded or revised the other communications imparting its unlawful directive." Dkt.88 at 4; *see also* Dkt.132 at 10-12.

### 2. Findings of Widespread and Ongoing Irreparable Harm.

Plaintiffs submitted dozens of declarations documenting harm caused by these *en masse* terminations throughout the country, across numerous federal agencies. Dkt.122 (chart of harm evidence relating to 16 departments and agencies).[1]

On this record, the Court found "concrete harms … flow[ing] from the way the unlawfully directed terminations disable the federal agency services on which they or their members depend, or otherwise imperil their organizational mission or membership." Dkt.132 at 12. It found some injuries had already occurred and others were "imminent," ranging from harm to national forests and public lands to inability to access grant funds. *Id.* at 12-13.

Notwithstanding these findings, OPM dismisses Plaintiffs' evidence as anecdotal. The record *is* replete with compelling examples of harms—such as the impact on the VA Veterans Crisis Line (Dkt.18-7 ¶9) and endangerment to CDC data security resulting from termination of all employees with specific cybersecurity credentials (Dkt.18-10 ¶18). But Plaintiffs also documented, and the Court credited, widespread ongoing and imminent harm. For example:

---

[1] The Court ordered reinstatement at six agencies for which it found the strongest evidence. Dkt.132 at 13.

- Conservation groups, Washington State, and others document widespread impairment to services provided to the public and fragile ecosystems in national parks and other public lands.  Dkts.18-11; 18-13; 18-15; 39-2; 39-3; 70-10; 70-15; 70-18; 70-19.

- The decimation of probationary staff at federal science agencies including NOAA, the CDC, and NIH is impairing scientific research, environmental conservation; fisheries, water, floodplain, and fire management; local public health work; and environmental justice initiatives.  Dkts.70-3; 70-16; 18-12; 70-11; 70-2; 70-5; 70-12; 70-4; 70-9; 70-10; 71; 18-13; 39-2; 70-18; 18-8; 18-9; 70-15.

- Terminations of FAA workers have "introduced unnecessary risk and stress that distracts from the mission of safe flight for civil and military operations" for flight attendants.  Dkts.70-13; 18-17.

- Impact on other VA services, including "mental health research, cancer treatment, addiction recovery, prosthetics, and burn pit exposure studies," transportation services, and administrative services that facilitate veterans' access to treatment.  Dkts.18-7; 18-3; 18-18; 18-12.

Based on this record, the District Court found irreparable harm justifying immediate relief.  Dkt.45 at 22-23; Dkt.132 at 13.

## B.    Statutory And Regulatory Background

Defendants agree that "OPM lacks statutory authority to direct agencies to terminate probationary employees."  Mot. at 2; *see also* 5 U.S.C. §§1102, 1103;

-7-

Dkt.45 at 8.  OPM's statutory role is limited to human resources support for other agencies, including by publishing government-wide rules in compliance with the Administrative Procedure Act ("APA"), 5 U.S.C. §§1103, 1105, and providing technical assistance, *id.* §§4304, 4305, 7514.

Myriad authorizing statutes delegate exclusive authority over employment decisions to the federal agencies—specifically, to agency heads.  Dkt.45 at 7-8. And Congress has delegated to agency heads the "General Authority to Employ" for their agencies.  5 U.S.C. §3101.

Congress has also constrained the manner by which agencies may terminate employees.  Agency downsizing may take place only through a reduction-in-force, which provides order of termination and bumping rights, and requires notice to employees, affected states, and local governments.  *E.g.*, 5 U.S.C. §3502; 5 C.F.R. §§351.402, 351.801-803.  Probationary employees (including employees new to a position, e.g., recently promoted) may be terminated based only on conduct or performance (after evaluation), and with detailed notice.  *See* 5 U.S.C. §2301(b)(6); 5 C.F.R. §315.804(a).

## C.    Prior Proceedings

Plaintiffs challenged OPM's acts as ultra vires and violating the APA on February 19, days after the first terminations were reported.  Dkt.1.  As of the preliminary injunction order, Defendants had not revealed how many probationary employees were fired, or at which agencies.  Dkt.132 at 8 ("no transparency").

Plaintiffs moved for a TRO four days later and submitted admissions from at least six agencies that OPM directed them to terminate all probationary employees because of those employees' limited appeal rights, and evidence of widespread hard already inflicted by these terminations.  Dkts.18–18-19; 39–39-6.

Against this, Defendants submitted *one* declaration from Acting OPM Director Ezell, which summarily denied that OPM directed any terminations. Dkt.34.  Defendants also submitted a January 20 OPM memorandum ordering agencies to compile and submit the names of all probationary employees and prepare to fire them, and a February 14 email directing agencies to separate all non-"mission critical" probationary employees.  Dkt.37; 37-1.

The District Court issued an oral TRO followed by a lengthy written opinion.  Dkt.44; 45.  It found Plaintiffs' "mountain" of evidence showed that OPM directed the terminations and documented widespread irreparable injury to Plaintiffs, and the single OPM declaration was not credible.  Dkt.45.  The Court ordered an evidentiary hearing on whether OPM ordered the terminations (which Defendants *invited*, Dkt.44 at 18-19), and that parties make all declarants available for cross-examination.  Dkt.45.  The court authorized a motion to amend to add agencies as Rule 19 defendants for purposes of effectuating relief.  Dkt.44 at 71:21-22; 72:14-22.

Following issuance of the TRO, OPM amended the January 20 memorandum to say agencies should make their own decisions (Dkt.64-1), but did

-9-

not "rescind" any other communications or ensure any employees were restored to service.

Plaintiffs moved to amend to add Rule 19 agency defendants and new plaintiffs including Washington State, for leave to file new declarations, and to join the new plaintiffs to the preliminary injunction motion. Dkt.49 at 2. Defendants did not oppose the latter two requests. Dkt.63. Plaintiffs made all declarants available for cross-examination. Dkt.49 at 11. At a March 6 status conference, the Court reiterated that all declarants must be available for cross-examination but directed that government witnesses could appear remotely or be deposed in Washington D.C. if more convenient. Dkt.65.

Defendants opposed Plaintiffs' motion, arguing, *inter alia*, that their TRO compliance mooted the case. Dkt.63. The District Court rejected Defendants' arguments and granted leave to amend. Dkt.88.

Rather than make Mr. Ezell available for cross-examination or deposition, Defendants moved to cancel the hearing and quash court-authorized subpoenas, and submitted a new declaration by Mr. Peters. Dkt.75, 77. The Court denied the motion. Dkt.89. Defendants then withdrew the Ezell declaration, refused to present any government witnesses, and called no Plaintiff declarants for cross-examination. Dkt.97.

On March 13, the court held a lengthy preliminary injunction hearing and orally granted preliminary injunctive relief followed by a written decision. Dkts.120 at 47-54, 132.

-10-

The Court found every preliminary injunction factor supported restoring the status quo. *Id.* It ordered OPM and six relief defendants to cease terminations, restore services by reinstating employees to their positions, and report on compliance by March 20. Dkts.120 at 52-54, 132. Defendants did not request a stay. *Id.* at 59.

The next day, Defendants moved for a stay pending appeal and filed six new agency declarations. Dkt.127-1–127-6. Without waiting for a ruling, they then filed in this Court an emergency motion for administrative stay and stay pending appeal. Defendants rely on their new declarations to dispute the District Court's findings, including that OPM ordered the terminations. Mot. at 20. On March 15, the District Court rejected Defendants' stay request, describing their new declarations as "a last-ditch attempt to relitigate those orders on a new, untested record" and as demonstrating mere administrative burdens, not that "they are … incapable of rehiring recently terminated probationers." Dkt.133 at 3-4. On March 17, 2025, this Court denied the administrative stay. Ninth Circuit ECF #14.

## STANDARD

A stay pending appeal is an "extraordinary request." *East Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 661 (9th Cir. 2021). It "is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009). The Court considers likelihood of success on appeal; irreparable injury absent a stay; whether a stay will injure other parties; and the public interest. *Id.* at 434. "The burden of demonstrating that these factors weigh[] in favor of a stay [lies] with the proponent[,]" and irreparable injury and likelihood of success

-11-

"'are the most critical' factors." *Mi Familia Vota v. Fontes*, 111 F.4th 976, 981 (9th Cir. 2024) (quoting *Nken*, 556 U.S. at 433-34).

## ARGUMENT

**I.    Defendants Do Not Establish Irreparable Injury.**

"An applicant for a stay pending appeal must show that a stay is necessary to avoid *likely* irreparable injury to the applicant while the appeal is pending. *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020) (citing *Nken*, 556 U.S. at 434 (noting "possibility of irreparable injury" is insufficient)) (emphasis added). Where this threshold showing is not made, "a stay may not issue," regardless of the other stay factors. *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020). And "[t]he government cannot meet this burden by submitting conclusory factual assertions and speculative arguments that are unsupported in the record." *Doe #1*, 957 F.3d at 1059-60. A District Court's denial of a stay pending appeal is reviewed for abuse of discretion. *Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983).

The District Court reviewed Defendants' proffered evidence and found no irreparable harm. Dkt.133 at 3-4. Its finding that Defendants' injury showing "fail[s] to persuade" was not clear error. *Id*. The Court correctly found that each asserted "harm" was not irreparable and "stems from the unwinding of the unlawful act and the return to the status quo." *Id.* at 4. Defendants repeat the rejected arguments here.

-12-

Notably, Defendants do not (and cannot) argue that complying with the injunction is impossible.  Defendants merely point to the "administrative burden" of contacting and onboarding unlawfully terminated employees.  Mot. at 21.

First, however, those harms are entirely self-inflicted, and are not "cognizable irreparable injur[ies]" that support a stay pending appeal.  *Al Otro Lado*, 952 F.3d at 1008. Administrative burdens do not support stays pending appeal.  *Al Otro Lado*, 952 F.3d at 1008 ("'Mere injuries, however substantial, in terms of money, time and energy necessarily expended … are not enough'") (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).[2]  And it stretches credulity that returning employees to work would cause irreparable harm to Defendants when these employees had the same workspace, credentials, benefits, and training days or weeks ago.

Second, as of the time the injunction issued, several agencies "ha[d] rehired large swaths of terminated workers for myriad reasons," and Defendants nowhere claimed to be "uniquely incapable of rehiring recently terminated probationers." Dkt.133 at 4.  And over the past week, the steps taken by Defendants to comply with a TRO issued by the Maryland District Court, which required the reinstatement of terminated probationary employees by March 17, conclusively

---

[2] Even more absurd is Defendants' argument that the preliminary injunction will cause *probationary employees* "uncertainty" and "perpetuate chaos and confusion," Mot. at 21, which the District Court flatly rejected.  Dkt.133 at 4.

-13-

establish that any claimed administrative burden is not irreparable. *See* Declaration of Robin S. Tholin, ¶¶3-7, Exs. A-D.

The Maryland TRO applies to eighteen federal agencies, including five of the six agencies covered by the preliminary injunction challenged here, and required a compliance report by March 17. *See id.* ¶4, Ex. A. Declarations by federal officials that were filed in Maryland District Court as part of that report attest that, over the weekend, federal agencies took steps to onboard previously terminated probationary employees—the same steps that Defendants now claim threaten "manifest" irreparable harm. *Id.* ¶7, Ex. D; Mot. at 20. While Defendants' declarations in that case do not establish compliance with the preliminary injunction here, in light of the steps Defendants have already taken, they cannot plausibly argue to this Court that any further actions needed to comply with the District Court's injunction would cause irreparable injury.

Finally, "the status quo would be seriously disrupted by an immediate stay[.]" *Nat'l Urb. League v. Ross*, 977 F.3d 698, 701 (9th Cir. 2020); *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 778 (9th Cir. 2018). The status quo is "the legally relevant relationship between the parties before the controversy arose." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist.*, 82 F.4th 664, 684-85 (9th Cir. 2023) (en banc). This is the case for a stay pending appeal just as it is for a preliminary injunction. *Doe #1*, 957 F.3d at 1068. Thus, in *Doe #1*, this Court squarely rejected the government's argument that implementation of the challenged action constituted the relevant status quo for purpose of the stay

-14-

pending appeal of a preliminary injunction: "In the government's re-imagining of the *status quo* in this context, this factor would always tip in the government's favor, effectively rendering the Court powerless to exercise its discretion…." *Id.* at 1068-69. Instead, it was the government's action "that that altered the *status quo* for the Plaintiffs." *Id.* at 1068. Likewise here, the last uncontested status before the "controversy arose," and before OPM's unlawful order to agencies to fire their employees altered the status quo for the Plaintiffs, was thousands of probationary employees fully employed and providing essential services to Plaintiffs and the public. The preliminary injunction restores that status quo.

Defendants' failure to pass this threshold test warrants summary denial.

## II.   Defendants Will Not Succeed in Overturning the Injunction.

The District Court's factual findings, including that OPM ordered the *en masse* termination of probationary employees on the pretext of unsatisfactory "performance," *supra* at 3, are supported by overwhelming evidence and subject to "very deferential" clear error review. *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 795 (9th Cir. 2005). In light of these findings, Plaintiffs are very likely to prevail on the merits.[3]

---

[3] Although the District Court's authorization of discovery is not appealable, *see Arc of California v. Douglas*, 757 F.3d 975, 992-94 (9th Cir. 2014), Defendants argue the District Court erred by authorizing Plaintiffs to take discovery on Defendants' affirmative factual representations. Mot. at 3. But even in APA-only cases, where there is a "'strong showing of bad faith or improper behavior [by the agency],' … a court may look beyond the administrative record." *In re U.S. Dep't*

-15-

### A.    There Is No Real Dispute that OPM Violated the Law.

Defendants concede that OPM lacks authority to order agencies to terminate their employees.  Mot. at 2.  In light of its factual findings, the District Court correctly found Plaintiffs likely to succeed on claims that OPM's actions were *ultra vires* because no statute "anywhere, ever" granted OPM authority to fire other agencies' employees, Dkt.45 at 7-9; *see also* Dkt.132 at 9-11; were in "excess of statutory authority" in violation of the APA, Dkt.45 at 9; Dkt.132 at 12; were "arbitrary and capricious" because neither OPM nor the agencies could have conducted claimed performance assessments, Dkt.45 at 9-10; Dkt.132 at 12; and were rules that failed to comply with notice-and-comment rulemaking, *id.* (which Defendants did not even contest).  Dkt.33 at 10-11; Dkt.39 at 12.

### B.    The District Court Correctly Found Standing.

OPM appears to concede Washington State's standing.[4]  The District Court's detailed findings that the Plaintiff organizations have standing, Dkt.44 at 66-67; 45

---

*of Educ.*, 25 F.4th 692, 701 (9th Cir. 2022).  And here, the District Court found that "the Government … has tried to frustrate the Judge's ability to get at the truth of what happened here and then set forth … a sham declaration – they withdrew it, then substitute[d] another."  Dkt.120 at 8:6-10.  Moreover, "[a] district court's decision whether to admit extra-record evidence is reviewed for abuse of discretion."  *Lands Council v. Powell*, 395 F.3d 1019, 1030 n.11 (9th Cir. 2005).

[4] As the record amply supports: *see* Dkt.70-2 (impairment to State's floodplain, water quality, and fire and smoke management, and important ecosystems); 70-5 (fisheries management); 70-6 (local services); 70-7 (many State services); 70-8 (unemployment insurance system); 70-11 (ocean acidification monitoring and recovery programs); 70-12 (water management work); *see also* Dkt.70-9–70-10, 71 (fisheries and forest management).

at 13-19; 132 at 12-13, are firmly grounded in the evidence and merit deference. *Doe v. Horne*, 115 F.4th 1083, 1100-01 (9th Cir. 2024).

Most Plaintiffs are membership organizations and have shown that their members face irreparable injury. *See Fellowship of Christian Athletes*, 82 F.4th at 681. Moreover, Plaintiffs "need only establish a *risk* or *threat* of injury to satisfy the actual injury requirement." *City & Cnty. of S.F. v. U.S. Citizenship & Immigr. Servs.*, 944 F.3d 773, 786-87 (9th Cir. 2019); *see also Harris v. Bd. of Supervisors*, 366 F.3d 754, 762 (9th Cir. 2004) (affirming preliminary injunction where "not speculative" that hospital cuts would "impede the County's ability to deliver medical treatment to plaintiffs in their times of need"). Plaintiffs presented extensive evidence of both *threatened* harms to services like those in *Harris*, and *actual*, ongoing harms to their members.[5] The District Court's finding that causation was not unduly speculative is entitled to deference. Dkt.45 at 21 ("Plaintiffs have each established a sufficient causal link between the mass

---

[5] *See*, *e.g.*, Dkts.18-3; 18-7; 45; 132 at 12 (veterans injured by probationary terminations in VA facilities); Dkts.18-17, 70-13 (flight attendants injured by FAA terminations); Dkts.18-16; 45; 70-20; Dkt.132 at 12 (Main Street Alliance members' imminent harm from SBA disaster relief and loan processing reductions and delays); Dkts.18-13; 18-15; 39-2; 39-3; 70-18; 70-19; *see also* Dkts.18-11; 45; 70-2; 70-5; 70-6; 70-9; 70-10; 70-11; 70-12; Dkt.132 at 12 (environmental groups' members injured by impairment of services and public safety on federal public lands and degradation of ecosystems and habitats, undermining their conservation work); Dkts.70-3; 70-16; 132 at 12 (scientific and public health groups' members harmed by termination of science agency employees who administer grants and generate data).

-17-

termination of employees at the implicated agencies, and the imminent, foreseeable, and in some cases actual injuries that they face.").[6]

The District Court also correctly found standing based on the impact of the challenged actions on Plaintiffs' organizational activities. Dkt.45 at 13-21, 132 at 12; *see Food & Drug Admin. v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 395 (2024); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982); *Fellowship of Christian Athletes*, 82 F.4th at 682-83 ("An organization has direct standing to sue where it establishes that the defendant's behavior has frustrated its mission and caused it to divert resources in response to that frustration of purpose.") (cleaned up). Plaintiffs documented the direct impact the terminations had on their ability to perform their own work, Dkts.18-13; 39-2; 70-4; 70-15; 70-18; *see* Dkts.45 at 17-19; 132 at 12, as well as other core activities and purposes, Dkts.45 at 19-20; 132 at 12; 18-3; 18-7; 18-15; 18-16; 39-3; 70-3; 70-13; 70-16; 70-17; 70-19.

### C. Plaintiff Organizations and Washington State Are Not "Channeled" to Administrative Agencies.

Defendants advance a novel argument of startling breadth: that Congress removed subject matter jurisdiction, expressly granted to federal courts by statute (28 U.S.C. §1331; 5 U.S.C. §701), over claims against OPM by Plaintiff organizations and Washington State. Defendants argued Congress acted by

---

[6] *See Covington v. Jefferson Cnty.*, 358 F.3d 626, 651–52 (9th Cir. 2004) (concrete injury supports standing even if widespread).

*implication* in statutes establishing agency procedures for hearing federal employee-employer disputes, under the *Thunder Basin* "channeling" doctrine.[7] But the statutes and agencies Defendants invoke—the Civil Service Reform Act ("CSRA") and Merit Systems Protection Board ("MSPB"), and the Federal Service Labor Management Relations Statute ("FSL-MRS") and Federal Labor Relations Authority ("FLRA")—were not created for and cannot hear these claims. This Court should not be the first ever, on a stay motion, to endorse a statutory interpretation divesting this Court's jurisdiction on a theory divorced from statutory text and purpose.

The *Thunder Basin* inquiry starts by examining whether the claims asserted "are of the type Congress intended to be reviewed" within a system of agency adjudication. *Id*. at 212; *accord Kerr v. Jewell*, 836 F.3d 1048, 1052-53 (9th Cir. 2016) (channeling some claims but not others). Plaintiff organizations and Washington sue OPM for taking unlawful action, beyond its statutory authority and in violation of the APA. Dkt.90 ¶¶190-229. Defendants cite no authority extending channeling doctrine, which has been applied to federal employee claims against their employing agencies, to *third-party* claims challenging unlawful government action, because no such case exists.[8] No controlling authority has ever

---

[7] Derived from *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207-13 (1994).

[8] The District of Maryland rejected this argument last week, in enjoining the probationary employee terminations in a case brought by a different coalition of

-19-

sent third parties to the administrative agencies designed to hear claims brought by employees against employing agencies simply because the unlawful action challenged impacts federal employment.[9] Nor has any controlling authority ever sent claims (under the APA or otherwise) involving government-wide rules or orders (including by OPM) to those agencies. *See also Feds for Med. Freedom v. Biden*, 63 F.4th 366, 375 (5th Cir.) (en banc), *judgment vac'd as moot*, 144 S.Ct. 480 (2023) (employee organization challenge to government-wide federal vaccination mandate for employees was not channeled to CSRA or FSL-MRS agencies).

Implied doctrines cannot be divorced from statutory text. *E.g.*, *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 391-92 (2024); *Alexander v. Sandoval*, 532 U.S. 275, 287 (2001).[10] The CSRA and FSL-MRS's systems for adjudicating employee claims against their employer agencies do not "channel" third parties

---

state attorneys general. *Maryland v. U.S. Dep't of Agriculture*, __ F.Supp.3d __, 2025 WL 800216, *12-15 (D. Md. Mar. 13, 2025); *see also American Foreign Service Ass'n v. Trump*, 2025 WL 573762, *4 n.1 (D.D.C. Feb. 21, 2025) (noting absence of non-union third-party plaintiffs).

[9] Defendants' Supreme Court cases address employees' claims against their employing agencies. *See Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012); *United States v. Fausto*, 484 U.S. 439 (1988). This Court has channeled employee claims against employing agencies, but never a third-party claim. *Veit v. Heckler*, 746 F.2d 508 (9th Cir. 1984); *see also Saul v. United States*, 928 F.2d 829 (9th Cir. 1991); *Russell v. U.S. Dep't of the Army*, 191 F.3d 1016 (9th Cir. 1999).

[10] *See also Axon Enters., Inc. v. FTC*, 598 U.S.175, 217 (2023) (Gorsuch, J., concurring) ("Respectfully, this Court should be done with the *Thunder Basin* project. I hope it will be soon.").

-20-

who cannot bring claims before either the MSPB or the FLRA. *See* 5 U.S.C. §7701 (MSPB appeals limited to "employee" or "applicant" claims challenging employer actions listed in §7512); §7703 (appeal rights limited to aggrieved employees and applicants); §§7103(a)(1), 7118 (FLRA: individual, labor organization, or agency can bring claims); §7123 (FLRA: appeal rights limited to same). Nor can these agencies, under these same provisions, hear claims against OPM for taking government-wide action.

The District Court correctly rejected Defendants' argument that these parties could somehow intervene or participate as amicus in these administrative proceedings. Dkt.63 at 6; Dkt.132 at 12. An amicus brief hardly substitutes for the APA's "command" of judicial review, *Dep't of Commerce v. New York*, 588 U.S. 752, 771-72 (2019), or the availability of ultra vires claims, *Sierra Club v. Trump*, 963 F.3d 874, 888-93 (9th Cir. 2020), *judgment vac'd on other grounds*, *sub nom.* *Biden v. Sierra Club*, 142 S. Ct. 46 (2021).

Defendants now try a new argument: "Congress's exclusion of non-profits alleging downstream effects from agency terminations from the CSRA's comprehensive review scheme indicates that plaintiffs cannot bring these claims at all." Mot. at 16; *compare* Dkt.63 at 6. But no authority supports the argument that third parties—which Congress never contemplated would participate in such agency proceedings, and indeed are excluded by statute—are foreclosed from bringing APA and ultra vires claims over which courts have express jurisdiction. This is particularly so when Congress expressly made the OPM actions here

-21-

subject to the APA (5 U.S.C. §§1103(b), 1105), so to judicial review (5 U.S.C. §702).  To support their extreme position, Defendants rely only on cases involving *employee claims against their employing agencies*, not third parties seeking to enjoin unlawful government-wide action.[11]  Nor would permitting injured states or organizations to sue OPM for unlawful government-wide actions require courts to "superintend" every individual employee claim against every agency—courts are well-equipped to understand the difference between a challenge to the legality of a government-wide rule and an employee's individual employment dispute.  *E.g.*, *Feds for Med. Freedom*, 63 F.4th at 375.[12]

The irony of Defendants' position is pronounced: this Administration bypassed all CSRA requirements in directing the terminations, and further seeks to dismantle the very agencies they contend are the appropriate avenues for relief—having removed members of the MSPB, the FLRA, and the Office of Special Counsel prosecutor, arguing that for-cause provisions limiting removal are unconstitutional, while simultaneously arguing Plaintiffs are bound by those laws.

No precedent supports Defendants' position, and the District Court did not err.

---

[11] Mot. at 16 (citing *U.S. v. Fausto*, 484 U.S. 439, 455 (1988); *Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009)).

[12] Defendants falsely assert the Court granted relief based on claims "directly against employing agencies."  Mot. at 17.  The Court permitted joinder of those agencies solely as Rule 19 defendants to permit complete relief.  Dkt.88 at 2-4.

-22-

**D.      Defendants' Challenge to the Scope of Relief Lacks Merit.**

**1.      Defendants' post-TRO actions were insufficient.**

The District Court correctly concluded that the post-TRO, March 5 revision to the January 20 OPM memo did not moot the case. Dkt.88 at 4; *see* Mot. at 2, 18; *supra* at 9.  The Court found no evidence that agencies were now acting "at their own discretion" or that OPM had rescinded all unlawful orders.  *Supra* at 4-5. Thus, the Court concluded: "Defendants' argument on this point simply asks that the [Court] accept OPM's factual contentions—supported only by counsel's say-so—as true."  Dkt.88 at 4.

In these circumstances, it cannot "be said with assurance that there is no reasonable expectation ... that the alleged violation will recur."  *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (quotations omitted); *see also Armster v. U.S. Dist. Court for C.D. Cal.*, 806 F.2d 1347, 1358 n.16 (9th Cir. 1986) (*Davis* test applies even where cessation is not voluntary).  The District Court rightly found that OPM's "two-sentence revision to one memo among several held likely to constitute an unlawful directive ... 'could be easily abandoned or altered in the future.'"  Dkt.88 at 5 (quoting *Fikre v. Federal Bureau of Investigation*, 904 F.3d 1033, 1038 (9th Cir. 2018)).[13]

---

[13] Notably, OPM did *not* actually "rescind the relevant communications," Mot. at 9, because it did not amend its February 14 email unlawfully directing agencies to terminate their employees and redefining the regulatory meaning of "performance."  Dkt.37-1, Ex. B at 1 ¶4.

Nor did the District Court err in declining to hold that OPM's actions "'*completely* and *irrevocably* eradicated *the effects of the alleged violation*.'" Dkt.88 at 4-5 (quoting *Fikre*, 904 F.3d at 1037); *see Davis*, 440 U.S. at 631 (requiring this showing for mootness). The District Court correctly found that Defendants failed to show that OPM had directed agencies to unwind the unlawful actions by rehiring the wrongfully fired probationary employees, nor did Defendants introduce *any* evidence that the government services harmed by its mass termination program have been or will be restored. Dkt.69-3 ¶¶3-4. Thus, the effects of OPM's acts have not been "eradicate[d]." *See, e.g.*, *Rezaq v. Nalley*, 677 F.3d 1001, 1009-10 (10th Cir. 2012); *Colvin v. Caruso*, 605 F.3d 282, 295-96 (6th Cir. 2010); *Randolph v. Rodgers*, 170 F.3d 850, 857 (8th Cir. 1999).

### 2. The District Court did not abuse its discretion in requiring reinstatement.

Defendants will not prevail on their backup argument that even if *some* relief were appropriate, reinstatement to restore services was not. Mot. at 2. They complain that the District Court "usurp[ed]" agencies' authority. *Id.* at 19. But the District Court found that "the agencies were directed by OPM to fire all probationary employees, and they executed that directive," so "[t]o staunch the irreparable harms to organizational plaintiffs caused by OPM unlawfully slashing other agenc[ies'] staff required immediately reinstating those employees." Dkt.132 at 13. There is nothing remarkable about ordering the rescission of actions that were *both* unlawfully ordered (because OPM lacked the authority) *and*

-24-

independently unlawful (because OPM's directive was arbitrary and capricious) (*see supra* at 13-14).[14]

The District Court's order properly restores "the legally relevant relationship between the parties before the controversy arose." *Fellowship of Christian Athletes*, 82 F.4th at 684; *see also supra* at 12. While "it is sometimes necessary to require a party who has recently disturbed the status quo to reverse its actions, … such an injunction restores, rather than disturbs, the status quo ante." *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014). Thus, the Maryland District Court deemed *broader* reinstatement of probationary employees at eighteen agencies to be "[a] prohibitory injunction [that] maintains the status quo." *Maryland*, 2025 WL 800216 at *22. Both district courts merely "order[ed] the Government to preserve the situation that existed before it embarked on the likely illegal mass terminations…." *Id.* at *23.

This relief is particularly appropriate for APA claims, where "[t]he normal remedy … is vacatur of the rule and its applicability to all who would have been subject to it." *Mass. v. Nat'l Institutes of Health*, __ F.Supp.3d __, 2025 WL 702163, *34 (D. Mass. Mar. 5, 2025). The "statutory power to 'set aside' agency action is more than a mere non-enforcement remedy," and encompasses "the power to 'strike down' an agency's work, and the disapproved agency action is treated as though it had never happened." *Griffin v. HM Fla.-ORL, LLC*, __ U.S. __, 144

---

[14] As the District Court explained, nothing in the preliminary injunction prohibits future statutorily authorized OPM guidance. Dkt.133 at 4-5.

S. Ct. 1, 2 n.1 (2023) (Kavanaugh, J.) (quotation omitted); *see also Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 522 (7th Cir. 2021) ("Vacatur [of agency action] retroactively undoes or expunges a past [agency] action....vacatur unwinds the challenged agency action.").

"'[T]he scope of injunctive relief is dictated by the extent of the violation established'; when "the Government has engaged in an illegal scheme spanning broad swaths of the federal workforce," broad relief is required. *Maryland*, 2025 WL 800216, at *25 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). "[T]he Government must start from square one, acting in compliance with federal law." *Id.* And here, the District Court's findings that there was "no evidence suggesting that federal agencies—some of which have continued to terminate probationers—are now acting at their own discretion" or that OPM "rescinded or revised the other communications imparting its unlawful directive," Dkt.88 at 4, are entitled to deference. Promises by counsel cannot overcome facts found by the District Court.

Finally, "when district courts are properly acting as courts of equity, they have discretion unless a statute clearly provides otherwise." *United States v. Oakland Cannabis Buyers' Coop.*, 532 U.S. 483, 496 (2001); *see also Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944) ("The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it.").

Given the evidentiary record, the District Court did not abuse its equitable discretion in fashioning equitable remedies. The order was limited to six agencies as to which Plaintiffs had strongly demonstrated irreparable injury. Dkt.132 at 13. And as the District Court explained, Defendants "wholly failed to argue there is any other way to avoid the irreparable injuries flowing from the unlawful terminations except to reinstate the employees." Dkt.133 at 2.

## III.    Equitable Factors All Weigh Against Stay

The District Court did not abuse its discretion in rejecting Defendants' balance-of-equities and public-interest arguments. Dkt.133 at 2; *see Earth Island Inst. v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010) ("assignment of weight to particular harms is a matter for district courts to decide"). As against Plaintiffs' showing of broad, ongoing, and irreparable harm, Defendants submitted no evidence of real harm. *Supra* at 11-12.

Moreover, as the District Court held, "'[t]he preservation of the rights in the Constitution and the legality of the process by which government agencies function certainly weighs heavily in the public interest.'" Dkt.132 at 13-14 (quoting *Nat'l Treasury Emps. Union v. U.S. Dep't of Treasury*, 838 F.Supp. 631, 640 (D.D.C. 1993)). Indeed, "the public … has an interest in ensuring that 'statutes enacted by [their] representatives'" are not imperiled by illegal executive action. *E. Bay Sanctuary Covenant*, 932 F.3d at 779. The public also has an interest in "full and considered attention" to the appeal's merits, rather than a hasty, nonbinding

-27-

decision. *Washington v. Trump*, 2025 WL 553485, at *2 (9th Cir. Feb. 19, 2025) (Forrest, J. concurring).

The equities and the public interest overwhelmingly disfavor a stay pending appeal.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion for a stay pending appeal.

DATED: March 18, 2025                    Respectfully submitted,

Scott A. Kronland
Stacey M. Leyton
Eileen B. Goldsmith
Danielle E. Leonard
Robin S. Tholin
James Baltzer
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151

By: */s/ Stacey Leyton* _____

*Attorneys for Plaintiff Organizations*

Norman L. Eisen
Pooja Chaudhuri
STATE DEMOCRACY DEFENDERS
FUND
600 Pennsylvania Avenue SE #15180
Washington, DC 20003
Tel: (202) 594-9958

By: */s/ Norman L. Eisen* _____

*Attorneys for Plaintiff Organizations*

Rushab Sanghvi
AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES
80 F Street, NW
Washington, DC 20001
Tel: (202) 639-6426

By: */s/ Rushab Sanghvi* _____

-29-

*Attorneys for Plaintiff American Federation of Government Employees (AFGE)*

Teague Paterson
Matthew Blumin
AMERICAN FEDERATION OF STATE,
COUNTY, AND MUNICIPAL
EMPLOYEES
1625 L Street, N.W.
Washington, D.C.  20036
Tel: (202) 775-5900

By: */s/Teague Paterson*

*Attorneys for Plaintiff American Federation of State County and Municipal Employees (AFSCME)*

Tera M. Heintz
Cristina Sepe
Cynthia Alexander
Deputy Solicitors General
OFFICE OF THE WASHINGTON STATE
ATTORNEY GENERAL
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

By: */s/ Tera M. Heintz*

*Attorneys for Plaintiff State of Washington*

-30-

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this motion complies with Federal Rule of Appellate Procedure 27(d)(1)(E) because it is proportionally spaced and has a typeface of 14 points. It contains 6,340 words, in compliance with the type-volume limitations of Circuit Rules 27-1(1)(d), 32-3(2), and 32-2(b), as a joint brief submitted by the separately represented parties of Plaintiff Organizations and the State of Washington.

Dated: March 18, 2025

*/s/ Stacey M. Leyton*
Stacey M. Leyton