No. 25-1677

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, et al.,

*Plaintiffs-Appellees,*

v.

UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al.,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Northern District of California
Case No. 3:25-cv-01780-WHA
The Honorable William Alsup

**BRIEF OF FORMER GOVERNMENT OFFICIALS AND SCHOLARS AS
AMICI CURIAE IN SUPPORT OF PLAINTIFFS-APPELLEES**

CONOR GAFFNEY
PROTECT DEMOCRACY PROJECT
3014 Dauphine St.
New Orleans, LA 70117
Tel. (202) 909-7272

JULIA L. TORTI
PROTECT DEMOCRACY PROJECT
82 Nassau Street, #601
New York, NY 10038
Tel. (202) 763-4425

*Counsel for Amici Curiae Former Government Officials and Scholars*

# TABLE OF CONTENTS

TABLE OF CONTENTS ...........................................................................i

TABLE OF AUTHORITIES ................................................................ ii

IDENTITY AND INTERESTS OF *AMICI CURIAE* ..............................1

INTRODUCTION...............................................................................1

ARGUMENT .....................................................................................3

    I.    Doctrines of implied congressional intent, such as Thunder Basin, are increasingly disfavored and narrowly applied.......................................3

    II.    Granting a stay would require administratively channeling third parties' legal challenges—thus embracing at this early stage a more expansive view of implied jurisdiction channeling than any other court...........................7

        A.    Statutory text explicitly authorizes federal district court review of Organizational Plaintiffs' claims.....................................................7

        B.    No court has stretched the Thunder Basin standard as far as OPM proposes.....................................................................................9

CONCLUSION ................................................................................12

CERTIFICATE OF CONFERENCE ....................................................14

CERTIFICATE OF SERVICE.............................................................14

APPENDIX ....................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*AFGE Loc. 1 v. Stone*, 502 F.3d 1027 (9th Cir. 2007) ............................................10

*Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175 (2023)...........................4, 6

*BedRoc Ltd., LLC v. United States*, 541 U.S. 176 (2004) ........................................5

*Biden v. Sierra Club*, 142 S. Ct. 46 (2021) ............................................................4

*Brock v. United States*, 64 F.3d 1421 (9th Cir. 1995) ............................................11

*Chamber of Com. of the U.S. v. Whiting*, 563 U.S. 582 (2011) ...............................6

*Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) ........5

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001) ................................................6

*Esparraguera v. Dep't of the Army*, 101 F.4th 28 (D.C. Cir. 2024) ......................10

*Feds for Med. Freedom v. Biden*, 63 F.4th 366 (5th Cir. 2023)............................12

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010) ..............11

*Int'l, Inc. v. Kerry*, 803 F.3d 1059 (9th Cir. 2015)..................................................8

*Mangano v. United States*, 529 F.3d 1243 (9th Cir. 2008) ....................................11

*Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012) ............................................5

*Nken v. Holder*, 556 U.S. 418 (2009)......................................................................1

*NTEU v. Helfer*, 53 F.3d 1289 (D.C. Cir. 1995) ......................................................9

*NTEU v. Von Raab*, 489 U.S. 656 (1989) ..............................................................12

*Saloojas, Inc. v. Aetna Health of Cal., Inc.*, 80 F.4th 1011 (9th Cir. 2023).............5

*Sierra Club v. Trump*, 963 F.3d 874 (9th Cir. 2020)...............................................4, 9

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) ..................................passim

*Trout Unlimited v. Pirzadeh*, 1 F.4th 738 (9th Cir. 2021)...........................................8

*United States v. Fausto*, 484 U.S. 439 (1988)....................................................10, 11

*United States v. NTEU*, 513 U.S. 454 (1995).........................................................12

*Veit v. Heckler*, 746 F.2d 508 (9th Cir. 1984).........................................................11

*West Virginia v. EPA*, 597 U.S. 697 (2022)...............................................................6

*Weyerhaeuser Co. v. U.S. Fish and Wildlife Serv.*, 586 U.S. 9 (2018) .................7, 8

*Ziglar v. Abbasi*, 582 U.S. 120 (2017) ......................................................................6

**Statutes**

28 U.S.C. § 1331 .....................................................................................................3, 5

5 U.S.C. § 1103 .......................................................................................................8, 9

5 U.S.C. § 1105 .......................................................................................................8, 9

5 U.S.C. § 701 .............................................................................................................8

5 U.S.C. § 702 .............................................................................................................3

92. Stat. 1111.............................................................................................................8

## IDENTITY AND INTERESTS OF *AMICI CURIAE*[1]

*Amici curiae*, listed in an appendix to this brief, are 20 former federal and state government officials and legal scholars. *Amici* have collectively served in career, appointed, and elected positions at both the state and federal levels. They have deep expertise in the administration of federal agencies, and in how state and local governments—as well as everyday Americans—rely on the services the federal government provides. *Amici*'s professional background gives them special appreciation for the importance of federal executive power and an informed perspective on its proper scope. *Amici* thus present a unique perspective not represented by the parties.

## INTRODUCTION

Defendant-Appellants United States Office of Personnel Management, Charles Ezell, et al. (hereinafter, "OPM") ask this Court for the extraordinary relief of an emergency stay of the district court's preliminary injunction. This Court should deny that request because OPM fails to meet the standard for a stay in *Nken v. Holder*, 556 U.S. 418 (2009). In particular, OPM's argument that the Civil Service

---

[1] Undersigned counsel affirm that no counsel for either party authored this brief in whole or part; no party or their counsel contributed financial support intended to fund the preparation or submission of this brief. No other individual or organization contributed financial support intended to fund the preparation or submission of this brief.

Reform Act ("CSRA") divests the district court of jurisdiction is likely to fail. *Amici* focus on one reason why: To justify the extraordinary relief of a stay pending appeal, OPM asks that this Court *extend* a disfavored doctrine beyond what any court has done, and find that the CSRA implicitly deprives federal district courts of jurisdiction to hear the Administrative Procedure Act ("APA") and *ultra vires* claims of the Organizational Plaintiffs[2]—who are true third parties, not federal employees or their unions or associations.[3]

The Supreme Court has cautioned that atextual doctrines of implied congressional intent, like that in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), should be applied narrowly. OPM's arguments at this preliminary stage to extend that doctrine beyond what any court has previously held should be approached with skepticism. The statutory history, text, and applicable case law all

---

[2] This brief uses the term "Organizational Plaintiffs" to refer to a subset of the plaintiffs in the district court action, specifically: Main Street Alliance, Coalition to Protect America's National Parks, Western Watersheds Project, Vote Vets Action Fund Inc., Common Defense Civic Engagement, the American Public Health Association, the American Geophysical Union, Climate Resilient Communities, and Point Blue Conservation Science, as well as the State of Washington. *Amici* take no position on the other plaintiffs' claims, and thus do not address jurisdictional channeling under the FSLMRS.

[3] *Amici* use the term "third parties" here and throughout this brief to refer to parties that are not federal employees, their unions, or associations of federal employees. They are "third parties" to the administrative scheme envisioned by the CSRA, but not, of course, third parties to this litigation or as that term is used in Article III standing jurisprudence.

establish that federal district courts have jurisdiction over the Organizational Plaintiffs' claims.

In the rushed and preliminary posture of a motion for a stay especially, this Court should decline to embrace OPM's novel arguments, the acceptance of which would significantly undermine the power of Article III courts to review government action. Ruling in OPM's favor would not only break with precedent and statutory text, it would diminish the role of the judiciary in reviewing consequential government acts. This disruption in the balance between our government's three co-equal branches could improperly insulate the executive branch from judicial scrutiny and erode the rule of law.

## ARGUMENT

I. **Doctrines of implied congressional intent, such as Thunder Basin, are increasingly disfavored and narrowly applied.**

Plaintiffs brought claims in this case under an express cause of action and invoked an express grant of federal jurisdiction. The APA provides that "[a] person . . . aggrieved by agency action . . . is entitled to judicial review thereof." 5 U.S.C. § 702. And 28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Plaintiffs' *ultra vires* claim is based on courts' longstanding equitable power to review illegal governmental acts that this Court and others have

3

acknowledged survived Congress's creation of remedies under the APA and other statutes. *See Sierra Club v. Trump*, 963 F.3d 874, 891 (9th Cir. 2020), *vacated as moot*, *Biden v. Sierra Club*, 142 S. Ct. 46 (2021).

Despite these clear textual provisions and foundations, OPM asserts that Plaintiffs' case cannot be maintained because, in enacting the CSRA, Congress implicitly eliminated federal district court jurisdiction to review these claims. OPM relies on a line of cases following the Supreme Court's decision in *Thunder Basin* which apply a two-step, multifactor balancing test to determine whether Congress's creation of an administrative review scheme, such as the one in the CSRA, implicitly deprives federal courts of jurisdiction to hear certain claims. *Amici* write to apprise the Court of the jurisprudential trend toward a more textually faithful mode of statutory interpretation and away from expansive application of doctrines that stem from implied congressional intent.

While *Thunder Basin* is still controlling law, the growing skepticism of doctrines of implied congressional intent counsels lower courts to apply *Thunder Basin*'s test narrowly and sparingly, lest judicial "suppositions about implicit congressional intentions" end up denying "some people the day in court the law promises them." *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 208, 217 (2023) (Gorsuch, J., concurring) (internal quotations and citations omitted). Especially in the context of a motion for a stay, where the Court does not have the

benefit of full briefing on the merits or oral argument, this Court should be wary of extending a disfavored doctrine.

At bottom, Plaintiffs rely on the explicit statutory terms of the APA, while OPM relies on a claimed implicit intent in a different statute to limit those express terms. In this matchup, the express statutory terms should control. Courts, including this Court, "presume that Congress expressed its intent through the statutory language it chose." *Saloojas, Inc. v. Aetna Health of Cal., Inc.*, 80 F.4th 1011, 1015 (9th Cir. 2023). It is axiomatic that judicial "inquiry begins with the statutory text, and ends there as well if the text is unambiguous." *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) And especially in matters of federal jurisdiction, the "jurisdiction conferred by 28 U.S.C. § 1331 should hold firm against 'mere implication flowing from subsequent legislation.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 383 (2012) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 808 (1976)).

In the context of the *Thunder Basin* analysis, specifically, Justice Gorsuch's recent concurrence in *Axon Enterprise* explained some of the reasons for such skepticism:

> [W]hat gives courts authority to engage in this business of jurisdiction-stripping-by-implication? The answer, of course, is nothing. Under our Constitution, "Congress, and not the Judiciary, defines the scope of federal jurisdiction." Federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not

given." That is why we have called it the "true rule" that "statutes clearly defining the jurisdiction of the courts . . . must control . . . in the absence of subsequent legislation equally express." . . . *Thunder Basin* defies these foundational rules.

*Axon Enter., Inc.*, 598 U.S. at 207–08 (internal citations omitted).

Across doctrines, the Supreme Court has retreated from the project of searching for implied meaning beyond statutory text. While federal courts used to frequently depart from statutory text in order to effectuate congressional purpose, that jurisprudence is now viewed as a "a relic of the heady days in which [the Supreme] Court assumed common-law powers," *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 75 (2001) (Scalia, J., concurring). Today, the Court has "abandoned that power to invent 'implications' in the statutory field." *Id*.; *see Ziglar v. Abbasi*, 582 U.S. 120, 121 (2017) (the *Bivens* doctrine of finding implied causes of action is "now considered a 'disfavored' judicial activity"); *Chamber of Com. of the U.S. v. Whiting*, 563 U.S. 582, 607 (2011) (noting the "high threshold" to find federal law has implicitly preempted state law); *West Virginia v. EPA*, 597 U.S. 697, 722–24 (2022) (implicit delegations of authority to agencies on major questions considered dubious).

This Court should apply *Thunder Basin* cautiously and decline federal jurisdiction only when Congress or controlling precedent clearly says it must. Here, that "high threshold" has not been met. *Whiting*, 563 U.S. at 607.

**II. Granting a stay would require administratively channeling third parties' legal challenges—thus embracing at this early stage a more expansive view of implied jurisdiction channeling than any other court.**

To justify the extraordinary relief of a stay, OPM must show that this Court is likely to embrace an *expansion* of the implied channeling doctrine. OPM pushes for broad rule without a basis in law: that third parties like the Organizational Plaintiffs cannot bring large-scale challenges claiming the government violated the law in federal district court if those claims are somehow related to a government "employment decision"—even if this means the plaintiff cannot meaningfully proceed in any forum. Dkt. No. 7.1 at 16–17. Though there will be time for the parties to brief more fully the merits of this argument, there is ample reason to proceed cautiously at this stage; OPM's argument finds no support in statutory text or judicial precedent.

### A. Statutory text explicitly authorizes federal district court review of Organizational Plaintiffs' claims.

As noted above, statutory interpretation must begin with the statutory text. Reading the APA and the CSRA together indicates that Congress intended for the Organizational Plaintiffs' APA claims against OPM to be heard in federal district court.

The APA "creates a basic presumption of judicial review for one suffering legal wrong because of agency action." *Weyerhaeuser Co. v. U.S. Fish and Wildlife*

*Serv.*, 586 U.S. 9, 22 (2018) (internal quotations and citations omitted). "The 'strong presumption that Congress intends judicial review of administrative action . . . is overcome only in two narrow circumstances.'" *Trout Unlimited v. Pirzadeh*, 1 F.4th 738, 751 (9th Cir. 2021) (quoting *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1068 (9th Cir. 2015)). The first exception is where "the relevant statute precludes review," and second is in a circumstance where the action is "committed to agency discretion by law." *Weyerhaeuser*, 586 U.S. at 23 (quoting 5 U.S.C. § 701 (a)(1)-(2)); *see also Trout Unlimited*, 1 F.4th at 751 ("narrowly" interpreting the agency discretion exception).

Congress enacted the CSRA in 1978, decades after the APA. Pub. L. No. 95-454, 92. Stat. 1111. Nowhere in the CSRA did Congress explicitly repeal the provisions of the APA that provide for judicial review of certain agency actions. The text of the CSRA does, however, refer in places to the APA. *See* 5 U.S.C. § 1103 (clarifying that the Director of OPM must comply with APA notice and comment rulemaking provisions, notwithstanding the APA's rulemaking exception for rules of agency procedure); 5 U.S.C. § 1105 (noting that "in the exercise of the functions assigned under this chapter, the Director shall be subject" to the APA). Far from impliedly repealing any provision of the APA—and especially a provision as central to the APA's purpose as its provision for judicial review of agency actions—the

CSRA actually cross-references parts of the APA as they relate to OPM. The CSRA provides no basis for this Court to skirt the clear commands of the APA.

OPM's sweeping argument that any challenge to an agency action related to an "employment decision" (which would effectively be *every* OPM decision and many other federal government-wide rules and actions) cannot be brought in federal district court is incompatible with this statutory text. Dkt. No. 7.1 at 17. Such a rule would insulate OPM's actions from APA review and conflict with the explicit statutory text of the CSRA which reinforces the APA's applicability to OPM actions. *See* 5 U.S.C. §§ 1103, 1105. The statute cannot bear such an interpretation, nor is it consistent with the case law. *See, e.g.*, *NTEU v. Helfer*, 53 F.3d 1289, 1295 (D.C. Cir. 1995) (entertaining an APA challenge to an OPM rule regarding hiring processes at the FDIC). Likewise, there is no carve-out of the long-established judicial power to review governmental action via *ultra vires* claims. *See Sierra Club*, 963 F.3d at 891.

### B. No court has stretched the Thunder Basin standard as far as OPM proposes.

OPM asks this Court to break new ground in the context of a motion for a stay pending appeal. No court has extended the *Thunder Basin* doctrine to apply to the Organizational Plaintiffs' claims here. Particularly at this early stage, precedent counsels against such a dramatic doctrinal extension.

9

No Supreme Court precedent requires this Court to administratively channel the Organizational Plaintiffs' APA claims. OPM wrongly claims that *Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012), supports channeling of "matters" related to "employment decision[s]." Dkt. No. 7.1 at 15, 17 (quoting passages from *Elgin*, 567 U.S. at 5, 8. But *Elgin*'s holding was explicitly limited to certain claims brought by a type of *federal employee*—the Court did not comment on APA claims of third parties harmed by agency actions. *See Elgin*, 567 U.S. at 15 (explaining that exclusivity of the administrative forum provided by the CSRA turns "on the *type of the employee* and the challenged employment action") (emphasis added).

Supreme Court precedent is limited to adjudicating whether the CSRA precludes judicial review *for federal employees* bringing certain types of covered claims. *See United States v. Fausto*, 484 U.S. 439, 443–44 (1988) ("The question we face is whether [the CSRA's] withholding of remedy was meant to preclude judicial review for [certain] *employees*.") (emphasis added). Indeed, courts have generally permitted federal jurisdiction where *federal employees* lack access to an administrative forum for certain types of claims. *See AFGE Loc. 1 v. Stone*, 502 F.3d 1027 (9th Cir. 2007); *Esparraguera v. Dep't of the Army*, 101 F.4th 28 (D.C. Cir. 2024).

The Supreme Court has declined to administratively channel large-scale challenges to governmental actions or systems like the Organizational Plaintiffs'

claims here. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 489 (2010) (Sarbanes-Oxley Act did not revoke federal district court jurisdiction over claims challenging the statute's creation of an oversight board); *Axon Enter., Inc.*, 598 U.S. at 189 (2023) (constitutional claims were not required to be initially brought before the SEC or FTC. And the Supreme Court has never administratively channeled APA claims under the *Thunder Basin* framework—let alone comprehensive challenges to government acts brought by third parties merely because they touch on employment-related issues. *See, e.g.*, *Elgin*, 567 U.S. at 22 (no APA claim); *Fausto*, 484 U.S. at 453 (same); *Thunder Basin Coal Co.*, 510 U.S. at 205 (same).

Likewise, no decision from this Court mandates that the types of claims brought by organizations like the Organizational Plaintiffs must be heard in front of an administrative tribunal. Ordinarily, this Court examines channeling in the context of personnel claims brought by federal employees. *See, e.g.*, *Veit v. Heckler*, 746 F.2d 508, 509 (9th Cir. 1984) (SSA employee); *Brock v. United States*, 64 F.3d 1421, 1424 (9th Cir. 1995) (Forest Service employee); *Mangano v. United States*, 529 F.3d 1243, 1246 (9th Cir. 2008) (VA physician). This Court has not strayed beyond these routine applications of the narrow Supreme Court precedent in this area. As one circuit court noted while declining to extend the implicit jurisdiction stripping doctrine to a large-scale challenge to government policy, courts have long

11

entertained challenges to governmental action, whether those broad challenges arise under the APA, Constitution, or other laws. *See Feds for Med. Freedom v. Biden*, 63 F.4th 366, 375–79 (5th Cir. 2023) (en banc), *cert. granted, judgment vacated on other grounds*, 144 S. Ct. 480 (2023) (citing *NTEU v. Von Raab*, 489 U.S. 656 (1989) and *United States v. NTEU*, 513 U.S. 454 (1995)).

This Court should decline OPM's invitation to extend *Thunder Basin* to true third-party plaintiffs bringing large scale challenges to governmental action that in some way relates to "employment decisions." To do so would depart from statutory text and judicial precedent, and improperly restrict Article III courts' ability to carry out their longstanding role in evaluating the legality of government action.

## CONCLUSION

Particularly in the context of an emergency motion, this Court should reject OPM's invitation to break with statutory text and precedent and extend channeling doctrine in a novel and unwarranted direction. Federal district courts have jurisdiction to hear Organizational Plaintiffs' APA and *ultra vires* claims challenging OPM's actions. Holding otherwise would contravene clear statutory text, as well the Supreme Court's instruction to extend doctrines based on implied congressional intent sparingly. It is critical to the proper functioning of our governmental system that this Court affirm federal courts' jurisdiction to review the legality of federal agency decisions.

Dated: March 18, 2025                    Respectfully submitted,

                                           /s/Julia L. Torti

                                           Julia L. Torti (NY 5190699)
                                           PROTECT DEMOCRACY PROJECT
                                           82 Nassau Street, #601
                                           New York, NY 10028

                                           Conor Gaffney (La. 38225)
                                           PROTECT DEMOCRACY PROJECT
                                           3014 Dauphine Street
                                           New Orleans, LA 70117

## CERTIFICATE OF CONFERENCE

This motion has been conferenced with counsel for the parties. Counsel for Plaintiffs-Appellees granted consent, and counsel for Defendants-Appellants responded that the government does not oppose an amicus brief that is timely filed in accordance with the Federal Rules of Appellate Procedure. Thus, all parties have given their consent for the filing of this brief.

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system.

I certify that I am a registered ACMS user; that all parties have registered ACMS users; and that service will be accomplished by the appellate ACMS system.


/s/Julia L. Torti
Julia L. Torti (NY 5190699)
PROTECT DEMOCRACY PROJECT
82 Nassau Street, #601
New York, NY 10028

## APPENDIX

A detailed list of *Amici* and their relevant backgrounds follows:

- **Donald B. Ayer**, Deputy Attorney General in the George H.W. Bush Administration (1989-90); Principal Deputy Solicitor General (1986-1988); United States Attorney for the Eastern District of California (1982-1986); Assistant United States Attorney (1977-1979).

- **Ty Cobb**, Special Counsel to the President in the Trump Administration (2017-2018); Assistant United States Attorney (1980-1986).

- **Barbara Comstock**, Representative of the 10th District of Virginia from 2015 to 2019 (R).

- **Mickey Edwards**, Representative of the 5th District of Oklahoma (1977-1993) (R).

- **John Farmer Jr.**, New Jersey Attorney General (1999-2002) (R); University Professor, Rutgers University, former Dean Rutgers Law School (2009-2013).

- **Stuart M. Gerson**, Acting Attorney General (1993); Assistant Attorney General (Civil) (1989-1993), Assistant United States Attorney for the District of Columbia (1972-1975).

- **Peter Keisler**, Acting Attorney General in the George W. Bush Administration (2007); Assistant Attorney General for the Civil Division (2003-2007); Principal Deputy Associate Attorney General and Acting Associate Attorney General (2002-2003); Assistant and Associate Counsel to President Ronald Reagan (1986-1988).

- **Philip Allen Lacovara**, Deputy Solicitor General in the Richard M. Nixon Administration (1972-1973); Counsel to the Special Prosecutor, Watergate Special Prosecutor's Office (1973-1974).

- **Judge J. Michael Luttig**, U.S. Circuit Judge, U.S. Court of Appeals for the Fourth Circuit (1991-2006).

- **John McKay**, U.S. Attorney for the Western District of Washington in the George W. Bush Administration from (2001-2007).

- **Trevor Potter**, Chairman of the Federal Election Commission (1994) and Commissioner of the Federal Election Commission (1991-1995).

- **Alan Charles Raul**, General Counsel of the Office of Management and Budget (1988-1989); Associate Counsel to President Ronald Reagan (1986-1988).

- **Paul Rosenzweig**, Deputy Assistant Secretary for Policy of the Department of Homeland Security in the George W. Bush Administration from 2005 to 2009.

- **Claudine Schneider**, U.S. Congresswoman from Rhode Island (1981-1991) (R).

- **Peter M. Shane**, Jacob E. Davis and Jacob E. Davis II Chair in Law Emeritus at The Ohio State University's Moritz College of Law; Attorney-Adviser in the Office of Legal Counsel (1978-1981).

- **Robert Shanks**, Deputy Assistant Attorney General for the Office of Legal Counsel in the Reagan Administration (1981-1984).

- **Christopher Shays**, Representative of the 4th District of Connecticut from (1987-2009) (R).

- **Olivia Troye**, Special Advisor, Homeland Security and Counterterrorism to Vice President Mike Pence (2018-2020).

- **William F. Weld**, Governor of Massachusetts (1991-1997) (R).

- **Christine Todd Whitman**, Governor of New Jersey (1994-2001) (R); Administrator of the Environmental Protection Agency (2001-2003).

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | No. 25-1677

I am the attorney or self-represented party.

**This brief contains** | 2,853 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◯ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◉ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [                    ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Julia L. Torti | **Date** | 3/18/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** *Rev. 12/01/22*