No. 25-1677

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, et al.,

Plaintiffs-Appellees,

v.

UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the Northern District of California

**REPLY IN SUPPORT OF EMERGENCY MOTION FOR
STAY PENDING APPEAL**

YAAKOV M. ROTH
   *Acting Assistant Attorney General*

PATRICK D. ROBBINS
   *Acting United States Attorney*

MARK R. FREEMAN
COURTNEY L. DIXON
CASEN B. ROSS
JOSHUA M. KOPPEL
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7270*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 514-1923*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................ 2

I. THE GOVERNMENT IS LIKELY TO PREVAIL ON THE MERITS ............................. 2

    A. The District Court Lacked Jurisdiction to Enter the Extraordinary Relief Ordered ........................................................................................ 2

    B. In All Events, the Reinstatement Order Is Baseless ................................... 7

II. The Equitable Factors Warrant a Stay ......................................................... 9

CONCLUSION ..................................................................................................... 12

CERTIFICATE OF COMPLIANCE

## INTRODUCTION

Plaintiffs' arguments come nowhere close to rehabilitating the district court's sweeping injunction, which orders six federal agencies to reinstate thousands of probationary employees in an effort to redress a speculative injury to organizational plaintiffs' enjoyment of government services. Plaintiffs' response confirms that they rely on speculative and attenuated harms that do not suffice for Article III standing, and plaintiffs' Civil Service Reform Act (CSRA) arguments would turn Congress's reticulated statutory scheme "upside down," by allowing members of the public to challenge the legality of federal-employment decisions with far fewer constraints than those required of the affected federal employees. *United States v. Fausto*, 484 U.S. 439, 449 (1988).

Plaintiffs also fail to rebut the government's showing that the district court's extraordinary reinstatement order does not follow from the perceived legal violation it identified. The court found that the Office of Personnel Management (OPM) had unlawfully directed agencies to terminate probationary employees in February 2025. But OPM complied with the court's temporary restraining order, rescinded relevant communications to agencies, and further issued a memorandum clarifying agencies' discretion. Dkts. 75, 78. That should have been the end of the matter, not a starting point for the district court to require agencies to reinstate probationary employees *en masse* on the novel theory that the agencies must not now be exercising independent personnel judgments.

In light of the disruption caused by the district court's order, and to allow the government an opportunity to seek relief from the Supreme Court if necessary, the government respectfully requests a decision on its stay motion by **12:00 PM Pacific Time on Friday, March 21**.

## ARGUMENT

I. **THE GOVERNMENT IS LIKELY TO PREVAIL ON THE MERITS**

    A. **The District Court Lacked Jurisdiction to Enter the Extraordinary Relief Ordered**

        1. **Article III Standing**

**a.** At the outset, plaintiffs' attempt to establish standing by relying on purported injuries to the State of Washington, Opp'n 16, is meritless. In granting a preliminary injunction, the district court expressly stated that it was "not considering the State of Washington," *see* 3/13/25 Tr. 57:7-9, and that its injunction "flows only from claims made by organizational plaintiffs," Dkt. 132, at 8. Washington was added as a plaintiff in the Second Amended Complaint, Dkt. 90, after the district court had already issued a temporary restraining order, Dkt. 45. And given the procedural irregularities of this case—where plaintiffs never filed a preliminary injunction motion—the government has not had occasion to brief Washington's standing in district court. The government has thus not "waive[d]" any arguments with respect to

2

Washington's standing by failing to address them in its stay motion, *contra* Opp'n 16; those arguments are simply irrelevant here.[1]

**b.** Plaintiffs do not rebut the government's showing that the organizational plaintiffs have established neither a cognizable injury nor redressability.

Plaintiffs repeat the district court's conclusion that they have established an injury-in-fact from agencies' terminations of probationary employees because those terminations will cause various delays or disruptions in government services. Opp'n 17. But plaintiffs merely speculate that terminations of probationary employees will impair or delay government services and thereby harm their members or their organizational missions. *See* Mot. 12-13; *see also, e.g.*, Dkt. 18-3, at 2, ¶ 9-10 (discussing fears of "potential cuts in services" at the Department of Veterans Affairs); Dkt. 70-18, at 2-3, ¶¶ 7-8 (opining that "a lack of [U.S.] Forest Service oversight of cattle grazing" could have adverse environmental effects); Dkt. 70-20, at 1, ¶ 4 (stating that Department of Agriculture grant programs for small businesses may be "less efficient" if federal employees who support grantees are terminated).[2] Plaintiffs insist

---

[1] In any event, plaintiffs' declarations purporting to establish Washington's standing, *see* Opp'n 16 n.4, 17 n.5, 18 (citing, *e.g.*, Dkts. 70-5, 70-6), largely rely on the same theories of injury as the non-profit-organization plaintiffs, which fail for the reasons discussed both in the government's stay motion and further below.

[2] To the extent plaintiffs seek to rely on declarations from the State of Washington or labor union plaintiffs, *see* Opp'n 17 n.5 (citing, *e.g.*, Dkts. 18-17, 70-2, 70-13) that is unavailing for the reasons explained; the district court's preliminary injunction was based solely on the alleged downstream harms to the non-profit-organization plaintiffs, and it did not rely on purported injuries to labor unions or to Washington. *E.g.*, Dkt. 45, at 11.

3

that they may establish standing based on a mere "*risk*" or "*threat*" of injury, Opp'n 17 (quotations omitted), but the Supreme Court has "repeatedly reiterated" that a "threatened injury must be *certainly impending* to constitute injury in fact," and "[a]llegations of *possible* future injury" are not sufficient, *Clapper v. Amnesty Int'l USA, Inc.*, 568 U.S. 398, 409 (2013) (quotations omitted). Plaintiffs' harms are far more speculative and attenuated than even the harms at issue in this Court's pre-*Clapper* decision on which they rely. Opp'n 17 (citing *Harris v. Board of Supervisors, Los Angeles Cty.*, 366 F.3d 754, 762 (9th Cir. 2004) (concluding that chronically ill individuals had standing to challenge a county's decision to close a specific hospital and reduce services at another from which the plaintiffs regularly sought services)).

Nor can plaintiffs establish injury from allegedly having to "divert resources" in response to agencies' terminations. Opp'n 18 (quotations omitted); *see* Dkt. 132, at 12; Dkt. 45, at 20-21. As previously explained, Mot. 13, that theory is squarely foreclosed by *FDA v. Alliance for Hippocratic Medicine*, which held that "divert[ing] [organizational] resources in response to a defendant's actions" is not an Article III injury-in-fact. 602 U.S. 367, 395 (2024). Plaintiffs offer no meaningful response, instead citing this Court's pre-*Alliance* precedent without further discussion. Opp'n 18. To the extent plaintiffs seek to compare their alleged harms to *Havens Realty Corp. v. Coleman*, 455 U.S. 367 (1982), Opp'n 18, they are incorrect. *Havens* involved a claim brought by a housing-counseling organization against an apartment-complex operator that had provided the organization "false information" about housing availability,

4

which directly impaired the organization's ability to operate its housing-counseling service. *Alliance*, 602 U.S. at 395 (discussing *Havens*). The organization's claim was thus comparable "to a retailer who sues a manufacturer for selling defective goods." *Id.* at 395-96 (describing *Havens* as an "unusual case" that the Court has avoided extending "beyond its context"). Plaintiffs do not allege any similar injury here but instead rely on the diversion-of-resources theory that *Alliance* rejected. *See, e.g.*, Dkt. 18-3, at 1, ¶ 6; Dkt. 18-7, at 2, ¶ 11.

    **c.** Even if plaintiffs' asserted harms established injuries-in-fact, those harms do not support the injunctive relief ultimately ordered by the district court. *See* Mot. 14. Plaintiffs urge that OPM unlawfully directed agencies to terminate probationary employees through various communications in February 2025. Opp'n 3-4. But as explained, OPM rescinded those communications in the course of this litigation and clarified that it "is not directing agencies to take any specific performance-based actions regarding probationary employees," and that "[a]gencies have ultimate decision-making authority" over such questions. Dkt. 78, at 2.

    It is now clear that agencies are exercising their own judgments in hiring and firing decisions independent of the original memorandum prompting the court's original order. As the district court noted, at least one agency subsequently "re-hired" terminated probationary employees. Dkt. 132, at 3. Other agencies made different decisions. *E.g.*, Dkt. 127-1, at 1, ¶ 7; Dkt. 127-3, at 1-2, ¶¶ 7-9.

5

To the extent plaintiffs allege injuries from the downstream effects of terminations, those injuries are not plausibly traceable to any extant OPM directive, nor are they redressable by any relief the district court could properly order in this suit. *See infra* p. 7-8. Deeming invalid OPM's original guidance will not restore specific jobs and lead to providing certain services that plaintiffs seek to use, especially when that guidance has *already* been withdrawn.

## 2. Subject-Matter Jurisdiction

Plaintiffs' arguments likewise fail to rebut the government's showing that the district court lacks jurisdiction to adjudicate plaintiffs' challenges to the employment decisions of federal agencies. The CSRA establishes a "comprehensive system" of review that provides the "exclusive means" for reviewing federal-employment matters. *See Elgin v. Department of Treasury*, 567 U.S. 1, 5, 8 (2012); Mot. 15.

Plaintiffs do not appear to dispute that if this lawsuit were brought by the real parties in interest—terminated probationary employees—it could only proceed through the scheme enacted by Congress. Plaintiffs urge that because they are "third parties" to the employment relationship that cannot proceed through the CSRA's administrative process, they may bring their claims directly in district court outside the CSRA's strictures. Opp'n 19-20. That gets it exactly backwards. The "exclusion" of end-users of government services "from the provisions establishing administrative and judicial review for personnel action of the sort at issue here prevents [them] from seeking review" under other provisions. *Fausto*, 484 U.S. at 455; *see also, e.g., Block v.*

6

*Community Nutrition Inst.*, 467 U.S. 340, 347 (1984) (recognizing that where statute omitted a "provision for participation" by dairy consumers in a complex statutory scheme, but allowed participation by dairy producers and handlers, "Congress intended to foreclose consumer participation in the regulatory process" and "intended a similar restriction of judicial review").

Congress did not leave a gaping hole in the CSRA by permitting end-users of government services to challenge federal employee terminations, which would be utterly at odds with Congress's intent in enacting the CSRA, which was to replace a "patchwork system with an integrated scheme of administrative and judicial review." *Fausto*, 484 U.S. at 445.

### B. In All Events, the Reinstatement Order Is Baseless

Even if the district court had jurisdiction, it had no basis to order reinstatement. The district court found that the termination decisions had been directed by OPM in February without statutory authority. Dkt. 132, at 10, 12. But as explained, Mot. 18, all agree that OPM lacks statutory authority to direct agencies to terminate probationary employees, and in the course of this litigation, OPM issued a memorandum on March 4 expressly clarifying that "OPM is not directing agencies to take any specific performance-based actions regarding probationary employees" and that "[a]gencies have ultimate decisionmaking authority." Dkt. 78, at 2. Any confusion was therefore cleared up, and agencies may make their own politically accountable decisions. In nonetheless deeming the clarifying memorandum a "sham"

7

and directing reinstatement at specific agencies, the district court usurped the very agency power it was purporting to vindicate. 3/13/25, Tr. 15-16. None of plaintiffs' arguments rehabilitate that fundamental flaw.

Plaintiffs do not advance their argument by gesturing to courts' equitable powers. Opp'n 25-27. Absent express statutory authority, a federal court may grant only those equitable remedies that were "traditionally accorded by courts of equity." *Grupo Mexicano de Desarollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999). Reinstatement is not a remedy that was traditionally available at equity. *See Sampson v. Murray*, 415 U.S. 61, 84 (1974). And while Congress departed from that equitable tradition in the CSRA, 5 U.S.C. §§ 1204(a)(2), 7701(g), 7703(b)(1), as discussed above, plaintiffs are not entitled to proceed under that statute.

Plaintiffs also invoke remedies available under the Administrative Procedure Act (APA). Opp'n 25-26. But the APA authorizes a court to grant injunctive relief subject to traditional equitable limitations. 5 U.S.C. § 702(1). Plaintiffs likewise cannot defend the district court's order by urging that "vacatur" is an available remedy under the APA. Opp'n 25. As discussed above, the district court's legal conclusion that OPM exceeded its statutory authority in directing agencies to terminate probationary employees would support—at most—an order holding OPM's directive unlawful and setting it aside. The court went far beyond that by directing agencies to reinstate terminated employees on the theory that an injunction might be needed to "tell[]

8

[agencies] to rehire" probationary employees because agencies were supposedly not exercising independent judgment. *See* 3/13/25, Tr. 15:21-22.

## II. The Equitable Factors Warrant a Stay

Plaintiffs similarly do not rebut the government's showing that the equitable factors favor a stay. The district court ordered reinstating more than 16,000 employees the government had determined to let go, causing significant burdens. *See, e.g.*, Dkt. 127-3, at 2, ¶¶ 10, 12. Plaintiffs seek to minimize the government's harms as simply "[a]dministrative," Opp'n 13, but the agencies have explained how the injunction has perpetuated "significant uncertainty" that "preclude[s] managers from effectively managing their workforce[s]." Dkt. 127-3, at 2-3, ¶¶ 11, 13; *see also, e.g.*, Dkt. 127-1, at 2, ¶ 12; Dkt. 127-2, at 2, ¶ 11; Dkt. 127-4, at 1, ¶ 5; Dkt. 127-5, at 1, ¶ 8. And while plaintiffs contend that it "stretches credulity" that agencies must undertake various onboarding tasks for reinstated employees, *see* Opp'n 13, they offer no basis to question the affected agencies' declarations explaining exactly that, *see, e.g.*, Dkt. 127-6, at 1, ¶ 5 (explaining that reinstatement is "complex" and imposes numerous "logistical burdens"); *see also* Dkt. 127-4, at 1, ¶ 6 (describing various onboarding requirements); Dkt. 127-5, at 2, ¶ 9 (same). And, critically, it disserves both the government and taxpayers to require the government to continue employing individuals whose services the government has determined it no longer requires—money that cannot be recovered if the government ultimately prevails.

9

These burdens are compounded by the fact that the court's injunction goes even further than requiring that federal employees be reinstated, directing that they be returned to full-duty status, complete with work assignments, in an effort to purportedly "restore" the specific government services that plaintiffs fear may be impeded. *See* Dkt. 138. To comply with the court's injunction, agencies must therefore give reinstated employees the same work assignments they had before February 13—regardless of changes to work assignments the agencies might have made between the terminations and the issuance of the preliminary injunction—or otherwise assign the reinstated employees specific tasks in a manner that may satisfy the court's concerns. Making matters worse, the district court has continued to issue post-injunction orders requiring agencies to provide further updates about their onboarding processes. *See* Dkts. 138, 140.

Plaintiffs cannot dismiss these irreparable harms by gesturing to a separate order by a district court in the District of Maryland requiring agencies to reinstate probationary employees. *See* Opp'n 13-14 (citing *Maryland v. U.S. Dep't of Agric.*, No. 25-cv-748 (D. Md.)). The government has appealed that order and sought a stay. Regardless, although the *Maryland* order extends to more agencies, the court's order here is more intrusive in other respects. The *Maryland* order gives agencies discretion to place reinstated probationary employees on administrative leave, *Maryland v. U.S. Dep't of Agric.*, No. 25-cv-748, 2025 WL 800216, at *27 (D. Md. Mar. 13, 2025); but the district court here has made clear that that is insufficient, *see* Dkts. 138, 140.

10

On the other side of the ledger, the plaintiffs' allegations of delays and disruptions from government services do not establish an Article III injury, let alone irreparable harm outweighing the government's authority to manage its own internal affairs. *See* Mot. 20-22. That is particularly so because reinstatement, while incredibly burdensome for the government, has at best an attenuated impact on any specific services respondents seek to utilize. As Judge Bade observed, plaintiffs "offer no reason to believe that *immediate* offers of reinstatement would cure" the potential defects in government services, as opposed to "draw[ing] (already depleted) agency resources away from their designated service functions." Mar. 17, 2025 Order 11 (Bade, J., dissenting).

11

## CONCLUSION

The Court should stay the preliminary injunction pending appeal.

Respectfully submitted,

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

PATRICK D. ROBBINS
  *United States Attorney*

MARK R. FREEMAN
COURTNEY L. DIXON

*s/ Casen B. Ross*
CASEN B. ROSS
JOSHUA M. KOPPEL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7270*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-1923*
  *casen.ross@usdoj.gov*

March 2025

12

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this motion complies with Federal Rule of Appellate Procedure 27(d)(1)(E) because it has been prepared using in 14-point Garamond, a proportionally spaced typeface, and that it complies with the type-volume limitation of Circuit Rule 27-1(1)(d) and 32-3(2) because it contains 2,553 words, according to Microsoft Word.

*s/ Casen B. Ross*
Casen B. Ross