**Nos. 25-1677, 25-2637**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

————————————————

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, et al.,

Plaintiffs-Appellees,

v.

UNITED STATES OFFICE OF PERSONNEL MANAGEMENT, et al.,

Defendants-Appellants.

————————————————

On Appeal from the United States District Court
for the Northern District of California

————————————————

### SUPPLEMENTAL BRIEF FOR APPELLANTS

————————————————

YAAKOV M. ROTH
  *Acting Assistant Attorney General*

PATRICK D. ROBBINS
  *Acting United States Attorney*

MARK R. FREEMAN
COURTNEY L. DIXON
CASEN B. ROSS
JOSHUA M. KOPPEL
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7212*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-4820*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ii

INTRODUCTION AND SUMMARY OF ARGUMENT .............................................1

STATEMENT OF JURISDICTION ..................................................................2

STATEMENT OF THE ISSUE ........................................................................3

STATEMENT OF THE CASE .........................................................................3

STANDARD OF REVIEW ............................................................................. 12

ARGUMENT ................................................................................................ 12

The Second Injunction Should Be Vacated For Lack of Subject-Matter
Jurisdiction ............................................................................................. 12

    A.    The Unions' Claims Fall Within The CSRA's Comprehensive
Framework, Which Precludes The District Court's Jurisdiction..............12

    B.    The District Court's Reasons For Exercising Jurisdiction Are
Unsupported ........................................................................................16

CONCLUSION ............................................................................................. 22

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:** Page(s)

*American Fed'n of Gov't Emps. v. Ezell,* No. 25-cv-10276,
2025 WL 470459 (D. Mass. Feb. 12, 2025) ................................................. 17

*American Fed'n of Gov't Emps. v. Secretary of the Air Force,*
716 F.3d 633 (D.C. Cir. 2013) ........................................... 5, 13, 15, 16

*American Fed'n of Gov't Emps. v. Trump,*
929 F.3d 748 (D.C. Cir. 2019) ..................................................... 4, 13

*American Foreign Serv. Ass'n v. Trump,* No. 1:25-cv-352,
2025 WL 573762 (D.D.C. Feb. 21, 2025) .................................... 17

*Association of Civilian Technicians, NY State Council v. FLRA,*
507 F.3d 697 (D.C. Cir. 2007) .......................................... 15, 18, 19

*Biden v. Feds for Med. Freedom,*
144 S. Ct. 480 (2023) .................................................................. 21

*Dalton v. Specter,*
511 U.S. 462 (1994) .................................................................. 20

*Elgin v. Department of the Treasury,*
567 U.S. 1 (2012) ........................................... 5, 12, 14, 20, 21

*Feds for Med. Freedom v. Biden,*
63 F.4th 366 (5th Cir. 2023) ................................................ 21, 22

*Graham v. Ashcroft,*
358 F.3d 931 (D.C. Cir. 2004) ............................................... 19

*Karnoski v. Trump,*
926 F.3d 1180 (9th Cir. 2019) ............................................... 12

*Maryland v. U.S. Dep't of Agric.:*
No. 1:25-cv-748, 2025 WL 973159 (D. Md. Apr. 1, 2025) .................... 11
No. 25-1248, 2025 WL 1073657 (4th Cir. Apr. 9, 2025) .................... 11, 13

*National Treasury Emps. Union v. Trump,* No. 25-cv-420,
2025 WL 561080 (D.D.C. Feb. 20, 2025) .................................... 17

*OPM v. AFGE,* No. 24A904,
2025 WL 1035208 (U.S. Apr. 8, 2025) ........................................ 1, 7

*United States v. Fausto,*
484 U.S. 439 (1988) ............................................... 2, 3, 13, 14, 17, 18

*United States v. Texas,*
599 U.S. 670 (2023) ............................................... 13

*Washington v. U.S. Food & Drug Admin.,*
108 F.4th 1163 (9th Cir. 2024) ............................................... 13

**Statutes:**

Civil Service Reform Act of 1978:
5 U.S.C. § 1204(a)(2) ............................................... 3
5 U.S.C. § 1212 ............................................... 3, 14
5 U.S.C. § 1214 ............................................... 3, 14
5 U.S.C. §§ 7101-7135 ............................................... 4
5 U.S.C. § 7102(2) ............................................... 4
5 U.S.C. § 7103(a)(9) ............................................... 20
5 U.S.C. § 7104(f)(2) ............................................... 4
5 U.S.C. § 7106 ............................................... 4
5 U.S.C. § 7114 ............................................... 4
5 U.S.C. § 7116 ............................................... 4
5 U.S.C. § 7116(a)(1) ............................................... 16
5 U.S.C. § 7116(a)(5) ............................................... 16
5 U.S.C. § 7116(a)(8) ............................................... 16
5 U.S.C. § 7117(a)(1) ............................................... 8
5 U.S.C. § 7118 ............................................... 16, 19
5 U.S.C. § 7118(a) ............................................... 8
5 U.S.C. § 7118(a)(1) ............................................... 4
5 U.S.C. § 7118(a)(1) ............................................... 4
5 U.S.C. § 7118(a)(1)-(2) ............................................... 4
5 U.S.C. § 7121(a) ............................................... 16
5 U.S.C. § 7121(a)-(b) ............................................... 4
5 U.S.C. § 7121(b) ............................................... 16
5 U.S.C. § 7122 ............................................... 4
5 U.S.C. § 7122(a) ............................................... 16
5 U.S.C. § 7123(a) ............................................... 4, 8, 16
5 U.S.C. § 7123(b) ............................................... 4
5 U.S.C. § 7511(a)(1) ............................................... 3
5 U.S.C. § 7512 ............................................... 3
5 U.S.C. § 7512 ............................................... 20, 21

5 U.S.C. § 7513(d) ............................................................................... 3, 8

5 U.S.C. § 7701 ..................................................................................... 3

5 U.S.C. § 7701(b) ................................................................................ 3

5 U.S.C. § 7701(g) ................................................................................ 3

5 U.S.C. § 7703(b)(1) ........................................................................... 3

28 U.S.C. § 1292(a)(1) .......................................................................... 2

28 U.S.C. § 1331 ................................................................................... 2

**Regulations:**

5 C.F.R. § 315.806 ............................................................................ 3, 14

5 C.F.R. §§ 2423.3–2423.6 .................................................................. 4

**Rules:**

Fed. R. App. P. 4(a)(1)(B) ..................................................................... 2

Fed. R. App. P. 4(a)(2) ........................................................................... 2

## INTRODUCTION AND SUMMARY OF ARGUMENT

This case was filed by federal labor unions and nonprofit organizations challenging the federal government's termination of certain probationary employees. The district court initially held that it lacked subject-matter jurisdiction over the unions' claims because those claims must be channeled through the special statutory review scheme that Congress created for labor disputes involving the federal workforce, but it issued a preliminary injunction on behalf of the nonprofit organizational plaintiffs, requiring the federal government to reinstate thousands of probationary employees. The government appealed and the Supreme Court stayed that injunction, concluding the organizational plaintiffs' allegations are "insufficient to support [their] … standing." *OPM v. AFGE*, No. 24A904, 2025 WL 1035208, at *1 (U.S. Apr. 8, 2025). The government filed its opening brief in this Court on April 10, 2025.

Subsequent to the Supreme Court's order, the district court issued a second preliminary injunction at the behest of the union plaintiffs, requiring the federal government to notify terminated employees that their terminations were not based on "performance" or fitness based. The federal government filed a second appeal, and this Court consolidated the two appeals. Pursuant to the Court's May 12, 2025, order, the government respectfully submits this supplemental brief to address the issues in the second appeal, No. 25-2637.

In issuing the second injunction, the district court again concluded that the U.S. Office of Personnel Management (OPM) likely violated the law by ostensibly directing the termination of probationary employees at other agencies. The government disputes that OPM in fact directed any such firings. But this Court need not address that merits issue because Congress has enacted a comprehensive scheme governing federal-employment and labor-management disputes, which deprives the district court of subject-matter jurisdiction. The unions seek to vindicate alleged harms to their members who are terminated probationary employees and alleged harms to themselves as unions purportedly caused by the federal government's employment decisions. But the unions' claims must be channeled through the "integrated scheme of administrative and judicial review" provided by the Civil Service Reform Act (CSRA) and the Federal Service Labor-Management Relations Statute (FSLMRS). *United States v. Fausto*, 484 U.S. 439, 445 (1988). That statutory review scheme is exclusive and withdraws district-court jurisdiction over federal personnel or labor disputes of this type. The court's second injunction, like the first, should be vacated.

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. § 1331. 2-ER-266, ¶ 12. The district court issued a preliminary injunction on April 18, 2025. 1-ER-2. Defendants filed a timely notice of appeal on April 23, 2025. 3-ER-483; *see* Fed. R. App. P. 4(a)(1)(B), (2). This Court has jurisdiction pursuant to 28 U.S.C. § 1292(a)(1).

## STATEMENT OF THE ISSUE

Whether the union plaintiffs failed to establish their entitlement to a preliminary injunction where the district court lacks subject-matter jurisdiction over those plaintiffs' claims.

## STATEMENT OF THE CASE

**1.** The Civil Service Reform Act "establishe[s] a comprehensive system for reviewing personnel action taken against federal employees." *United States v. Fausto*, 484 U.S. 439, 455 (1988). Under the CSRA, most civilian employees of the federal government can appeal a significant personnel action—including a removal, suspension for more than 14 days, or furloughs for 30 days or less—to the Merit Systems Protection Board (MSPB). 5 U.S.C. §§ 7512, 7513(d), 7701. The MSPB can order relief to prevailing employees, including reinstatement. *Id.* §§ 1204(a)(2), 7701(b), (g). The Federal Circuit has exclusive jurisdiction to review most final decisions of the MSPB. *Id.* § 7703(b)(1).

Federal employees in their probationary period generally do not have a right to appeal to the MSPB. 5 U.S.C. § 7511(a)(1); 5 C.F.R. § 315.806 (providing certain probationary employees MSPB appeal rights for claims involving alleged discrimination, including based on partisan political reasons or marital status); *see* Opening Br. 25 (further detailing this scheme). In certain circumstances, probationary employees may file a complaint with the Office of Special Counsel, which may in turn pursue administrative relief before the MSPB. *See* 5 U.S.C. §§ 1212, 1214.

3

Title VII of the CSRA, also known as the Federal Service Labor-Management Relations Statute, governs labor relations between the Executive Branch and its employees. *See* 5 U.S.C. §§ 7101–7135; *American Fed'n of Gov't Emps. v. Trump*, 929 F.3d 748, 752 (D.C. Cir. 2019). The FSLMRS grants federal employees the right to organize and bargain collectively, and it requires that unions and federal agencies negotiate in good faith over conditions of employment. 5 U.S.C. §§ 7102(2), 7106, 7114.

The FSLMRS also establishes dedicated mechanisms for resolving federal labor disputes. For example, an employee or union may file a charge with the Federal Labor Relations Authority (FLRA) alleging that an agency has engaged in an unfair labor practice. *See* 5 U.S.C. §§ 7116, 7118(a)(1); 5 C.F.R. §§ 2423.3–2423.6. The General Counsel of the FLRA "shall investigate" any such charge and may file and prosecute a complaint against the agency. 5 U.S.C. § 7118(a)(1)–(2); *see also id.* § 7104(f)(2). The FLRA's final decision is subject to judicial review in the courts of appeals. *Id.* § 7123(a), (b).

The FSLMRS also requires that every collective-bargaining agreement between a union and an agency "provide procedures for the settlement of grievances," as well as provide for binding arbitration of grievances that cannot be settled. 5 U.S.C. § 7121(a)–(b). The FLRA is charged with reviewing exceptions to an arbitrator's award. *Id.* § 7122.

Regardless of whether federal-employment or federal-labor-relations claims are directed to the MSPB or the FLRA, the CSRA's review scheme is "exclusive," and it "precludes district court jurisdiction" over claims within its scope. *Elgin v. Department of the Treasury*, 567 U.S. 1, 8, 13 (2012); *American Fed'n of Gov't Emps. v. Secretary of the Air Force*, 716 F.3d 633, 638 (D.C. Cir. 2013) (affirming a district court's dismissal for lack of jurisdiction because "[t]he FSLMRS provides the exclusive procedures by which federal employees and their bargaining representatives may assert federal labor-management relations claims").

**2.** On February 19, four public-sector labor unions filed this suit against OPM and Acting OPM Director Charles Ezell, 3-ER-511, primarily alleging that OPM exceeded its statutory authority by "order[ing] federal agencies" to terminate probationary employees, 3-ER-450–51; 2-ER-461–65. Shortly thereafter, plaintiffs filed an amended complaint adding non-profit organizational plaintiffs and moved for a temporary restraining order. 2-ER-267–69, ¶¶ 20–24; 3-ER-410–13.

On February 27, the district court issued a temporary restraining order from the bench. 3-ER-517. In a written order issued the next day, the court determined that it has jurisdiction over the organizational plaintiffs' claims but held that it likely lacks jurisdiction over the union plaintiffs' claims. As relevant here, the court explained that the labor unions' claims "'are the vehicle by which [the union plaintiffs] seek to reverse the removal decisions, to return [union members] to federal employment, and to [collect] the compensation they would have earned but for the

5

adverse employment action,'" and Congress has "channeled" such claims "to the FLRA and MSPB." 3-ER-390–91 (third alteration in original). In so holding, the court agreed with the reasoning of other courts that have held that similar claims by federal labor unions challenging federal employment actions must be channeled. *See* 3-ER-389 (collecting authorities).

On the merits, the court observed that OPM "concedes that it lacks the authority to direct firings outside of its own walls," 3-ER-386, but it rejected OPM's factual contention that it did not direct the firings and reasoned that other federal agencies likely terminated employees at OPM's direction, 3-ER-384–85. The court's temporary restraining order deemed certain memoranda and communications by OPM "unlawful" and "invalid," and it directed OPM to "stop[] and rescind[]" "all other efforts by OPM to direct the termination of employees" at certain federal agencies. 3-ER-402.

OPM promptly complied with the court's order. Moreover, on March 4, OPM issued revised guidance clarifying that "OPM is not directing agencies to take any specific performance-based actions regarding probationary employees." 2-ER-376. OPM emphasized that "[a]gencies have ultimate decision-making authority over, and responsibility for, such personnel actions." 2-ER-374.

**3.** On March 11, plaintiffs filed a second amended complaint, adding other nonprofit organizations and the State of Washington as plaintiffs, and naming 22 additional federal agencies as defendants "for [r]elief [p]urposes [o]nly." 2-ER-271.

6

On March 13, the district court held a hearing and issued a preliminary injunction from the bench, limited to claims made by the nonprofit organizational plaintiffs.  3-ER-524–25 (minute entry); 1-ER-99; *see also* 1-ER-94–101.  The court ordered six agencies to "immediately" "offer reinstatement" to probationary employees terminated in February 2025 and "cease" terminating probationary employees "at the direction of … OPM."  1-ER-94–95; *see also* 1-ER-29–42 (written order).

On April 8, the Supreme Court granted a stay of the injunction pending resolution of the government's appeal and the disposition of any petition for certiorari, explaining that the organizational plaintiffs' allegations are "insufficient to support [their] standing."  *OPM v. AFGE*, No. 24A904, 2025 WL 1035208, at *1 (U.S. Apr. 8, 2025).

**4.a.**  During the March 13 hearing, the district court also ordered the parties to address whether the court had erred in previously holding that it lacked jurisdiction over the union plaintiffs' claims, 1-ER-97–98; and the court subsequently invited the State of Washington to move for a preliminary injunction, 2-ER-175–76.

On March 24, the district court held that it has subject-matter jurisdiction over the union plaintiffs' claims and that its "earlier ruling to the contrary was mistaken." 2-ER-164.  The district court reasoned that the unions' claims are outside the MSPB's and the FLRA's expertise because they raise "standard issue[s] of administrative and constitutional law" and do not implicate the kind of "employer-agency policy choices

that the MSPB or the FLRA commonly parse." 2-ER-166–67 (quotation marks omitted). The court also maintained that the unions' claims are "collateral to the types of claims brought before the MSPB or the FLRA" because they do not concern any "employer agency's purported decision to terminate any or all of its employees," but instead concern whether "OPM exceed[ed] its authority when it directed all federal agencies to terminate their probationers *en masse*." 2-ER-167–68. Finally, the district court concluded that the union plaintiffs' claims "will not be subject to judicial review if not litigated here." 2-ER-169. As to the MSPB, the court explained that an employee "cannot contest … 'a removal' [before the MSPB] *if she is probationary*." 2-ER-169 (quoting 5 U.S.C. § 7513(d)). And the court thought the FLRA would be unable to review the union plaintiffs' claims because they ostensibly concern "a Government-wide rule or regulation," 2-ER-171 (quoting 5 U.S.C. § 7117(a)(1)), and because the FLRA's General Counsel might decline to file a complaint, 2-ER-171; *see* 5 U.S.C. §§ 7118(a), 7123(a).

The district court then ordered the parties to show cause why the preliminary injunction "extended to the organizational plaintiffs … should not be extended to the public-sector union plaintiffs." 2-ER-162.

**b.** On April 18, the district court granted a new preliminary injunction to the union plaintiffs, but concluded that Washington had failed to establish irreparable harm. 1-ER-2–28.

First, the district court concluded that plaintiffs have Article III standing. The court held that the union plaintiffs had associational standing to sue on behalf of their members—probationary employees who were terminated—who had suffered a "clear … injury" from their termination. 1-ER-16. And the court concluded that the union plaintiffs had organizational standing because they "have themselves been harmed"— "[t]erminated union members cease to pay their union dues … and thus reduce a key source of [the unions'] operational funding," which "diminish[es] union plaintiffs' ability to provide services to [their] members." 1-ER-17–18.

The district court further determined that Washington had established standing based on an asserted "increase in unemployment benefit claims" in February and March, and "at least some of those claimants were probationary employees." 1-ER-22. The court reasoned that Washington has "expended considerable additional time and resources to process those employees' unemployment insurance claims," which has "diver[ted] … resources" and "delayed benefits payments to Washingtonians," as well as "required Washington to expend additional funds." 1-ER-22–23. The court concluded, however, that Washington had failed to establish standing "based on the purported loss of federal services" from the federal government's termination of probationary employees—"the specific services and partnerships identified by Washington rests on a speculative chain of contingencies" that could not establish a cognizable injury, and Washington failed to show redressability. 1-ER-21–22.

Addressing subject-matter jurisdiction, the district court simply noted that it previously held that the plaintiffs' claims do not have to be channeled. 1-ER-10. And on the merits, the court again reasoned that OPM likely directed other federal agencies to terminate probationary employees, which "infringed" on those agencies' "statutory authority to hire and fire their own employees" and exceeded OPM's own authority. 1-ER-11–15.

With respect to the remaining preliminary injunction factors, the district court largely concluded that plaintiffs failed to establish ongoing irreparable harm. The court recognized that "there is little on the record to suggest that the unions' core business functions are still being frustrated" by any terminations that were allegedly at the behest of OPM, and the State of Washington's assertions of irreparable injury were "premised on a speculative chain of possibilities" about downstream harms to government services. 1-ER-24–26 (quotation marks omitted). The court stated, however, that the union plaintiffs had established irreparable harm "flowing from OPM's template termination letter, and its pretense of 'performance' based firings," 1-ER-25, which the court concluded irreparably injured the terminated probationary employees. 1-ER-26.

The district court thus entered "[p]rovisional relief," prohibiting OPM "from ordering, directing, or telling any other federal agency to terminate the employment of any federal employee or group of federal employees" and prohibiting the other federal-agency defendants "from following any OPM order or direction to fire any

10

agency employee" or using an "OPM template termination letter." 1-ER-27. The district court also required agencies that used OPM's template in terminating probationary employees to either provide those employees "with a written statement … that their termination was not 'performance' or fitness based but was made as part of a government-wide mass termination," or submit a declaration stating that "a particular termination was in fact carried out after an individualized evaluation of that employee's performance or fitness." 1-ER-27. The court also made clear that it was not "prohibit[ing] any federal agency from terminating any employee so long as the agency makes that decision wholly on its own." 1-ER-27.

On May 8, the federal agency defendants provided declarations explaining the steps they had taken to comply with the court's order, including that the agencies had provided recipients of the OPM template notice with a written statement as required by the court's order and providing details of employees whose terminations were carried out "after an individualized evaluation of their performance." 2-ER-105–08.[1]

---

[1] As noted in the opening brief, p. 13 n.1, five agencies in this case are also subject to a preliminary injunction requiring the reinstatement of probationary employees working or residing in 19 States and the District of Columbia. *Maryland v. U.S. Dep't of Agric.*, No. 1:25-cv-748, 2025 WL 973159 (D. Md. Apr. 1, 2025). The Fourth Circuit stayed that injunction, concluding that the district court likely "lacked jurisdiction." *Maryland v. U.S. Dep't of Agric.*, No. 25-1248, 2025 WL 1073657, at *1 (4th Cir. Apr. 9, 2025).

## STANDARD OF REVIEW

This Court reviews the grant of a preliminary injunction "for abuse of discretion, but review[s] any underlying issues of law de novo." *Karnoski v. Trump*, 926 F.3d 1180, 1198 (9th Cir. 2019) (per curiam).

## ARGUMENT

### THE SECOND INJUNCTION SHOULD BE VACATED FOR LACK OF SUBJECT-MATTER JURISDICTION

#### A. The Unions' Claims Fall Within The CSRA's Comprehensive Framework, Which Precludes The District Court's Jurisdiction

At the outset of this case, the district court addressed subject-matter jurisdiction and recognized that the union plaintiffs raised claims and sought remedies that fall within the CSRA's exclusive review scheme and that it therefore lacks subject-matter jurisdiction over those claims. 3-ER-389–90. That initial conclusion was correct. As our opening brief established (pp. 24–29), the CSRA, of which the FLSMRS is a part, provides an "exclusive" scheme for administrative and judicial review of challenges to personnel actions taken against members of the civil service and disputes over labor–management relations in the federal workplace. *Elgin v. Department of the Treasury*, 567 U.S. 1, 5, 8 (2012). The union plaintiffs seek to raise claims on behalf of their terminated-employee members and on behalf of themselves as labor unions, alleging that OPM unlawfully directed the termination of federal employees across the government and that the agencies' own explanations for the

terminations were pretextual.  2-ER-299; *see* 1-ER-17, 1-ER-19.  And the unions seek—and the district court granted—remedies that go to the heart of the federal employer-employee relationship.  2-ER-318; *see also* 1-ER-2–28.[2]

The district court lacked subject-matter jurisdiction to adjudicate the unions' claims and craft its own remedies that it believed appropriate.  Through the CSRA, "Congress intentionally provided—and intentionally chose not to provide—particular forums and procedures for particular kinds of claims."  *American Fed'n of Gov't Emps. v. Secretary of the Air Force*, 716 F.3d 633, 636 (D.C. Cir. 2013) (alterations and quotation marks omitted).  Congress allowed certain individual federal employees who are affected by agency personnel decisions to challenge those actions "by litigating their claims through the statutory scheme in the context of [a] concrete" dispute, with limitations imposed by Congress on the kinds of claims and remedies available.  *American Fed'n of Gov't Emps. v. Trump*, 929 F.3d 748, 757 (D.C. Cir. 2019).

---

[2] The district court granted relief here only to the union plaintiffs, correctly recognizing that the State of Washington failed to establish irreparable harm for purposes of obtaining preliminary relief.  *See* Dkt. 202, at 25.  Accordingly, this Court need not address at this juncture the district court's threshold conclusions that it has jurisdiction over Washington's claims.  Precedent makes clear, however, both that Washington failed to establish Article III standing, *see United States v. Texas*, 599 U.S. 670, 674, 680 & n.3 (2023); *Washington v. U.S. Food & Drug Admin.*, 108 F.4th 1163, 1175–76 (9th Cir. 2024); and the district court lacks subject-matter jurisdiction over Washington's claims, *see United States v. Fausto*, 484 U.S. 439, 449–50 (1988); *Maryland v. U.S. Dep't of Agric.*, No. 25-1248, 2025 WL 1073657, at *1 (4th Cir. Apr. 9, 2025) (granting stay pending appeal of injunction issued to states challenging federal government's termination of probationary employees, concluding that "the district court [likely] lacked jurisdiction over [the plaintiffs-states'] claims); Opening Br. 24–29.

These provisions foreclose the unions from filing suit on behalf of their employee members seeking to challenge their terminations. An individual federal employee who believes their termination was unlawful must litigate that claim through the CSRA's comprehensive scheme, limited to the rights and remedies provided by Congress. *See United States v. Fausto*, 484 U.S. 439, 455 (1988). As the government's opening brief elaborated (p. 25), in the CSRA, Congress chose not to provide probationary employees the same appeal rights afforded to other employees. Probationary employees in the competitive service may appeal to the MSPB only in limited circumstances, such as to seek review of "a termination not required by statute which [the employee] alleges was based on partisan political reasons or marital status" or that "was not effected in accordance" with specified procedural requirements. 5 C.F.R. § 315.806. Probationary employees can also lodge complaints with the Office of Special Counsel, which can investigate prohibited personnel practices. 5 U.S.C. §§ 1212, 1214.[3]

Probationary employees, like other federal employees, cannot avoid this "exclusive" scheme by filing suit to challenge employment actions in district court. *Elgin*, 567 U.S. at 13. For the same reason, federal unions may not frustrate the CSRA's integrated scheme by filing suit in district court to challenge the terminations on their members' behalf. Were that permitted, any unionized employee "could

---

[3] Some probationary employees have availed themselves of these limited appeal rights to challenge the terminations at issue here before the MSPB.

circumvent the CSRA's strictures by requesting that" their union file suit "outside the CSRA." *American Fed'n of Gov't Emps.*, 716 F.3d at 639.

Nor can the unions file suit in federal district court asserting purported harms to the unions themselves stemming from the federal government's employment decisions. The unions allege that they have ostensibly been prevented "from exercising [their] core functions as employee representative[s]," including engaging in "collective bargaining and providing counseling, advice and representation to represented employees." 2-ER-301. But a component of the CSRA, the FSLMRS, "governs federal labor-management relations" and "establishes a comprehensive scheme to deal with labor relations in federal employment," which channels adjudication to the FLRA followed by direct review in the court of appeals. *American Fed'n of Gov't Emps.*, 716 F.3d at 636 (quotation marks omitted). Like other provisions of the CSRA, the FSLMRS "regime is exclusive," and a union "cannot circumvent [it] by instead bringing suit in district court." *Id.* at 636–37.

The FSLMRS provides several mechanisms for unions to challenge management actions—at least two of which are available here. *See American Fed'n of Gov't Emps.*, 716 F.3d at 636–38; *Association of Civilian Technicians, NY State Council v. FLRA*, 507 F.3d 697, 699 (D.C. Cir. 2007). If the unions believe that an agency has terminated probationary employees to interfere with the union's representation of those employees or to avoid procedures required under a collective-bargaining agreement—such as those related to agency reductions in force, *cf.* 2-ER-282–86

(alleging that agencies did not "comply[] with [reduction-in-force] procedures")—the unions can file unfair-labor-practice charges before the FLRA. *See* 5 U.S.C. §§ 7116(a)(1), (5), (8), 7118. The FLRA's final order regarding such a charge is subject to judicial review in a court of appeals. *Id.* § 7123(a). The unions could alternatively raise an unfair-labor-practice claim using the grievance and arbitration procedures that are in every collective-bargaining agreement. *See* 5 U.S.C. § 7121(a), (b). The arbitral award would be subject to review by the FLRA, *id.* § 7122(a), and the FLRA's order would then be subject to judicial review, *id.* § 7123(a) (permitting judicial review of an FLRA order reviewing an arbitral award if the order "involves an unfair labor practice").

Like other CSRA provisions, the FSLMRS "can preclude a claim from being brought in a district court even if it forecloses the claim from administrative review." *American Fed'n of Gov't Emps.*, 716 F.3d at 638. But the preclusive effect of the FSLMRS is even more clear here where plaintiffs do have a statutory method of review. While the unions "may not prevail using one of these procedures" or may "prefer to challenge" the terminations in district court, they cannot bring their claims "outside the CSRA's exclusive remedial scheme." *Id.*

## B. The District Court's Reasons For Exercising Jurisdiction Are Unsupported

In concluding that it could exercise subject-matter jurisdiction over the union plaintiffs' claims, the district court not only reversed course from its own earlier

decision, but it also expressly disagreed with "three recent decisions in other district courts holding that claims brought by public-sector unions concerning federal employee terminations had to be channeled through the [MSPB] and/or the [FLRA]." 2-ER-164; *see American Foreign Serv. Ass'n v. Trump*, No. 1:25-cv-352, 2025 WL 573762, at *7–11 (D.D.C. Feb. 21, 2025); *National Treasury Emps. Union v. Trump*, No. 25-cv-420, 2025 WL 561080, at *5–8 (D.D.C. Feb. 20, 2025); *American Fed'n of Gov't Emps. v. Ezell*, No. 25-cv-10276, 2025 WL 470459, at *2 (D. Mass. Feb. 12, 2025).

The district court's reasons for its reversed course do not withstand scrutiny. The district court primarily concluded that it could exercise jurisdiction because probationary employees have only limited rights to raise claims before the MSPB. *See* 2-ER-169. But the fact that Congress chose not to provide probationary employees certain appeal rights in the CSRA does not "leave" those employees—let alone unions suing on their behalf—"free to pursue" claims in district court. *Fausto*, 484 U.S. at 443–44. The Supreme Court rejected such an argument in *Fausto*. There, a federal employee who lacked any "right to administrative or judicial review" under the CSRA challenged his suspension in federal claims court under the Back Pay Act. *See id.* at 440, 443. The Supreme Court explained that Congress's choice to "withhold[]" a remedy under the CSRA "preclude[d] judicial review" for that employee—it did not "leave [the employee] free to pursue" different remedies in a different forum. *Id.* at 443–44, 448–49. The CSRA's exclusion of probationary employees from certain appeal rights provided to other classes of employees "displays a clear congressional

17

intent to deny the[m] … the protections of [the CSRA]—including judicial review—for personnel action covered by that [statute]." *Id.* at 447. The district court's theory—that Congress's *exclusion* of probationary employees in the CSRA means that labor unions may file suit directly in district court free of any of the CSRA's constraints—gets it exactly backwards.

That conclusion is reinforced by the comprehensive scheme Congress enacted specifically governing federal labor-management relations. As explained above, the unions themselves have exclusive mechanisms to assert their claims before the FLRA and then obtain judicial review—through an unfair-labor-practice charge brought directly in the FLRA or through a collective-bargaining agreement's grievance and arbitration process. *See supra* pp. 15–16.

The district court wrongly brushed aside these avenues for review for the labor unions' claims. First, the district court asserted that no collective-bargaining agreement "provide[s] an avenue for arbitrating the issues in this case." 2-ER-170. As explained above, however, the claims alleging purported harm to the unions themselves—including allegedly being prevented from exercising their rights as the representatives of probationary employees—are fundamentally unfair-labor-practice claims. And it is well-established that a union "may file a grievance in accordance with its collective bargaining agreement that alleges an unfair labor practice, a violation of the collective bargaining agreement, or both." *Association of Civilian Technicians*, 507 F.3d at 699.

18

The district court also surmised that the FLRA's General Counsel might decline to submit an unfair-labor-practice complaint to the FLRA. 2-ER-171; *see* 5 U.S.C. § 7118 (requiring the General Counsel to investigate charges of unfair labor practices). That reasoning proves too much: It would always permit a union or employee to assert an unfair-labor-practice claim in district court, rather than with the FLRA, simply because the General Counsel *might* decline to issue a complaint before the FLRA. Congress deliberately limited the administrative-review scheme by giving the FLRA's General Counsel authority to decide whether to file a complaint, which should not give litigants the option to circumvent the administrative-review scheme altogether. A statutory scheme's "comprehensiveness," not the "'adequacy' of specific remedies thereunder … counsels judicial abstention." *Graham v. Ashcroft*, 358 F.3d 931, 935 (D.C. Cir. 2004) (Roberts, J.) (quotation marks omitted). In any event, a union could use the grievance process, rather than file a charge directly in the FLRA, which would obviate any question about the General Counsel's review. *See Association of Civilian Technicians*, 507 F.3d at 699.

The district court's further reasoning is likewise erroneous. The district court emphasized that the unions allege that "OPM exceed[ed] its authority" when it purportedly "directed all federal agencies to terminate their probationers *en masse*." 2-ER-167–68. But the fact that plaintiffs challenge a large number of employment decisions does not change the nature of plaintiffs' claims: Plaintiffs allege that probationary employees were unlawfully terminated and that agencies have impaired

the unions' ability to represent their members, which are the same claims that are normally adjudicated through the CSRA's administrative scheme. *See, e.g.*, 5 U.S.C. § 7103(a)(9) (broadly defining a "grievance"); *id.* § 7512 (applying the provisions of the CSRA to "removal[s]"). For the same reason, the district court's belief that the unions' claims implicate the separation of powers, 2-ER-166, 2-ER-168–69, provides no basis for its holding. Plaintiffs cannot dress up this dispute in constitutional or separation-of-powers garb to avoid the CSRA's comprehensive provisions. *Cf. Dalton v. Specter*, 511 U.S. 462, 473 (1994) ("'[C]laims simply alleging that the President has exceeded his statutory authority are not 'constitutional' claims."). Indeed, when the federal government is the employer, practically any employment or labor-management-relations claim based in a statute could be labeled as constitutional or involving the separation-of-powers, facilitating end-runs around the CSRA's strictures. In any event, because the unions have an avenue to bring their claims before the FLRA and then obtain judicial review, *see supra* pp. 15–16, they cannot bring those claims in district court even if they are constitutional in nature. *See Elgin*, 567 U.S. at 12 (declining to "carve out an exception to CSRA exclusivity for facial or as-applied constitutional challenges to federal statutes").

The injunctive relief the district court has ordered in this case confirms that the unions' claims raise issues that Congress intended to be brought before the MSPB or FLRA. Addressing the same allegations at the behest of nonprofits, the district court (erroneously) ordered the reinstatement of thousands of employees. *See* Opening Br.

30–34. In addressing the unions' same allegations, the court believed that reinstatement was an available remedy, though it believed it was unnecessary in light of its earlier relief to the nonprofits. 1-ER-24–25. The court therefore granted different relief to the unions: enjoining the defendant agencies from further terminating employees for certain reasons and ordering the agencies to send terminated employees a written statement reflecting the district court's view of the circumstances of their terminations, ostensibly to correct their employment records. 1-ER-27. But Congress enacted the CSRA to provide exclusive rights and remedies for federal employees (and unions), and it withdrew jurisdiction from district courts to address such matters and grant alternative relief. *See, e.g.*, *Elgin*, 567 U.S. at 22.

The district court's reliance on *Feds for Medical Freedom v. Biden*, 63 F.4th 366 (5th Cir. 2023) (en banc), was mistaken. That decision was vacated by the Supreme Court as moot and holds no precedential value (even in the Fifth Circuit). *See Biden v. Feds for Medical Freedom*, 144 S. Ct. 480 (2023). In any event, the Fifth Circuit in that case held that the CSRA's exclusive provisions did not apply because the court believed that a vaccination requirement was not a personnel action under the CSRA. *See Feds for Med. Freedom*, 63 F.4th at 370–78. Here, plaintiffs challenge federal employees' terminations, which are indisputably personnel actions under that scheme. *See* 5 U.S.C. § 7512 ("This subchapter applies to … a removal … ."). If anything, *Feds for Medical Freedom* further undermines the district court's reasoning by acknowledging that, under *Fausto*, "an employee cannot avoid the CSRA's implicit stripping of § 1331

21

jurisdiction by saying" that "Congress's decision to limit" rights and remedies to covered employees "should be read to allow" employees not covered by those rights and remedies to "avoid the CSRA." 63 F.4th at 385 (quotation marks omitted).

## CONCLUSION

For the foregoing reasons and those in the government's opening brief, the preliminary injunctions should be vacated.

Respectfully submitted,

YAAKOV M. ROTH
    *Acting Assistant Attorney General*
PATRICK D. ROBBINS
    *United States Attorney*

MARK R. FREEMAN
COURTNEY L. DIXON
CASEN B. ROSS

  *s/ Joshua M. Koppel*
JOSHUA M. KOPPEL
    *Attorneys, Appellate Staff*
    *Civil Division, Room 7212*
    *U.S. Department of Justice*
    *950 Pennsylvania Avenue NW*
    *Washington, DC 20530*
    *(202) 514-4820*
    *joshua.m.koppel@usdoj.gov*

May 2025

22

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of the Court's May 12, 2025, briefing order because it contains 5,149 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

*s/ Joshua M. Koppel*
Joshua M. Koppel